COMMONWEALTH *vs.* FOSTER B. PHELPS.
SAME *vs.* SAME.

Worcester.     October 2, 1911. — October 17, 1911.

Present: RUGG, C. J., HAMMOND, BRALEY, SHELDON, & DeCOURCY, JJ.

*Milk. Evidence,* Relevancy and materiality, Competency, Opinion: experts. *Practice, Criminal,* Conduct of trial. *Witness.*

In a prosecution under R. L. c. 56, §§ 57, 58, charging the defendant with having in his possession with intent to sell and in receptacles not properly marked milk which was not of good standard quality or from which the cream or a part

thereof had been removed, where it has been proved that the defendant had had in his possession with intent to sell milk of the description set out in the complaint, evidence, that he had not intended to have in his possession with intent to sell milk which the statute prohibited or that the milk which he had in his possession and had intended to sell was not of a character injurious to the public, is immaterial on the question of the defendant's guilt.

At the trial together of two complaints, the first charging the defendant with having in his possession with intent to sell milk which was not of good standard quality, contrary to the provisions of R. L. c. 56, § 57, and the second charging him with having in his possession with intent to sell and in receptacles not properly marked milk from which the cream or a part thereof had been removed, contrary to the provisions of § 58 of the same chapter, a witness for the Commonwealth was asked in cross-examination if he had read certain bulletins issued by chemists of the United States Agricultural Department and if certain statements therein were not contrary to statements by him in his direct testimony. He answered that he had read some of the bulletins but that he had . not found therein any such statement as the defendant referred to. The defendant then offered a bulletin, corresponding to the description contained in his question of the witness, without further proof of its authentication and offered to show by statements therein facts contrary to some testified to by the witness in his direct examination. *Held*, that the document did not tend to contradict the testimony of the witness, and therefore was not admissible even in cross-examination.

At the trial together of two complaints, the first charging the defendant with having in his possession with intent to sell milk which was not of good standard quality, contrary to the provisions of R. L. c. 56, § 57, and the second charging him with having in his possession with intent to sell and in receptacles not properly marked milk from which the cream or a part thereof had been removed, contrary to the provisions of § 58 of the same chapter, neither the whole nor any part of a document bearing the title " Milk and Its Relation to the Public Health, House of Representatives, Document No. 702 under the supervision of the Hygienic Laboratory, Bulletin No. 41, W. J. Rosenan, Director, printed in the government printing office, Washington, D. C.," or of a book entitled " The Science and Practice of Cheese-making" asserted by the defendant to have been published by a person whom one of the witnesses had quoted in his direct examination, or of a document called " Bulletin No. 110," asserted by the defendant to have been written by chemists of the Hatch Experiment Station of the Massachusetts Agricultural College, is admissible to disprove assertions of witnesses for the Commonwealth.

It is within the discretionary powers of the judge presiding at the trial of a criminal complaint to determine how far the defendant shall be permitted in cross-examination of witnesses for the Commonwealth to inquire into collateral matters for the purpose of showing that the witnesses are hostile or biased in their opinions, as also to determine whether a witness offered by the defendant as an expert is qualified to give such testimony, and, unless it clearly appears that the judge acts arbitrarily or that the defendant is prejudiced unjustly, the judge's decision in such matters will not be reversed by this court.

Two COMPLAINTS, received and sworn to in the Police Court of Fitchburg on April 26, 1910, the first charging the defendant with a violation of R. L. c. 56, § 57, in having in his posses-

sion with intent to sell milk which was not of good standard quality; and the second charging him with a violation of § 58 of the same chapter in having in his possession with intent to sell milk from which the cream or a part thereof had been removed without the receptacle being marked "skimmed milk."

On appeal to the Superior Court, the cases were tried together before *Fox,* J.

One Charles E. Hickey, called by the Commonwealth, testified that he had analyzed milk taken on the defendant's premises and that he had found all of the samples below the statutory standard in fat and solids, and that in two of the samples the percentage of the protein was greater than the percentage of fat, which showed unmistakably that cream had been removed from the milk, " for in unskimmed normal milk the percentage of fat always exceeds the percentage of protein"; that a percentage of two and five-tenths in fat "is the lowest he ever found ever attained in un-skimmed normal milk, while in this case the percentage of fat in one sample was as low as two per cent." On cross-examination he was asked if he had not heard of cases where the protein exceeded the fat, and where the percentage of fat was less than two and five-tenths in normal milk. He replied that he had never heard of such cases. He then was asked if he had read the bulletins on milk and its composition issued by the chemists in the United States Agricultural Department, and if it was not stated therein that a percentage of fat below two per cent had been found in normal milk. He said he had read some of the bulletins but he had not found any such statement there or elsewhere. The defendant then produced a bulletin entitled " Milk and Its Relation to the Public Health " issued in 1908 as " House of Representatives, Document No. 702 under the supervision of Hygienic Laboratory, Bulletin No. 41, M. J. Rosenau, Director, printed in the government printing office, Washington, D. C.," and offered to show by statements and tables therein that the protein in normal milk sometimes exceeds the fat and that the percentage of fat is sometimes below two per cent in such milk. The presiding judge excluded the evidence thus offered.

One Herman C. Lythgoe, called by the Commonwealth, corroborated the testimony of Hickey in the main and especially the statement that the lowest percentage of fat in pure milk he

had ever found was two and five-tenths per cent and that in such milk the percentage of protein was always less than the fat. In the course of his cross-examination he stated that certain statements and figures he had given in his direct examination on the percentage of fat in milk were the figures of one Van Slyke in an article published by him in the American Journal of Science. On cross-examination he was asked if the Van Slyke he referred to was Lucius L. Van Slyke, Ph.D., the chemist of the New York Agricultural Experiment Station, and he said "He is the man." The defendant then produced a book entitled "The Science and Practice of Cheese-making," purporting to be published by Van Slyke and another, and offered to exhibit it or to read therefrom statements and figures tending to contradict the testimony of the witness. The presiding judge excluded the evidence.

The defendant then asked the witness if he knew "Joseph B. Lindsey, Ph.D., the head chemist of the Hatch Experiment Station of the Massachusetts Agricultural College at Amherst," and he replied that he did not know him personally, but he had heard of him and presumed he was a good chemist. The defendant thereupon produced "a bulletin, No. 110, on market milk, written by said Lindsey and Prof. P. H. Smith, assistant chemist at said Hatch Experiment Station," and offered to exhibit or to read therefrom for the purpose of showing that the percentage of fat in pure milk is sometimes lower than two and five-tenths per cent. The presiding judge excluded the evidence.

The defendant called Charles W. Wood, Esquire, an attorney at law, who testified that he had been familiar with milk and cream both as a handler and producer for forty years; that he had had for a long time a large herd of cows and had made a study of milk and its constituent parts for many years and had written extensively on the subject; that he owned and used a Babcock tester for the purpose of ascertaining the percentage of fat and solids in the milk from his cows; that he never turned the handle nor filled the testing bottles with the milk and acids when a test has been made, but that the tests had been made hundreds of times under his observation and supervision; that it had been his custom for years to have many of his cows tested for the advanced registry of the Holstein-Friesian Association of America, which testing had been done under his direction and

supervision by a supervisor furnished by the Hatch Experiment Station at the Massachusetts Agricultural College in Amherst. The defendant then asked him to examine the cards which the State chemist had sent to the defendant, on which appeared the analysis of the samples of milk taken on the defendant's premises, and to state whether in his opinion such analysis showed conclusively that the milk or any part of it had been skimmed. The Commonwealth objected to the question on the ground that Mr. Wood had not qualified himself to testify as an expert on the matter. The presiding judge sustained the objection and excluded the testimony on the ground that it did not appear that he was a chemist or that he could make an analysis of milk himself.

The defendant then asked Mr. Wood the following question: "What is the lowest percentage of fat you have found in normal milk from your cows as disclosed by the Babcock test when made under your observation and supervision?" The presiding judge excluded the question.

The defendant also asked Mr. Wood whether he had with him books or bulletins relating to milk and its composition of recognized authority, and he said that he had, and thereupon produced the first bulletin above described. The defendant stated that he offered the book to show that it was therein stated that the percentage of fat in normal milk is sometimes as low as one and sixty-seven one-hundredths per cent, and that sometimes the protein in normal milk exceeds the fat therein. The presiding judge excluded the bulletin.

The jury returned a verdict of guilty in both cases; and the defendant alleged exceptions.

*B. W. Potter*, for the defendant.

*J. A. Stiles*, District Attorney, (*E. T. Esty*, Assistant District Attorney, with him,) for the Commonwealth.

BRALEY, J. The complaints respectively charged the defendant under R. L. c. 56, §§ 57, 58, with having in his possession milk below the standard prescribed by § 56 of that chapter, and milk from which the cream or a part thereof had been removed, which he intended to sell in violation of the statute, and, having been convicted, he urges that the published official documents, articles or bulletins treating of the subject and containing certain statements that milk might be pure even if found to be below the

percentage of fat required by our statute, or that protein in normal milk sometimes exceeds the fat, which were offered by him in evidence, were relevant and should have been admitted. But proof of the defendant's intention not to sell milk below the standard, or that milk might be considered as commercially pure or even normal although sometimes lacking the full statutory requirement, was inadmissible. In prosecutions for statutory misdemeanors of the class defined by the statute, the intention or design of the defendant not to violate the law, or proof that the product which he sells is not injurious to the community, may absolve him from moral turpitude but cannot relieve him from the penal consequences of the prohibited act. *Commonwealth* v. *Wheeler*, 205 Mass. 384. *Commonwealth* v. *New York Central & Hudson River Railroad*, 202 Mass. 394, 396, 397, and cases cited.

There is no rule of evidence applicable to either complaint which makes documents of the character here offered competent evidence of the truth of the alleged facts found in the publication.

Nor did the questions asked and excluded in cross-examination of the witnesses for the prosecution have any tendency to contradict their testimony. The various publications therein referred to contained no statement made by either of the witnesses, and they were not responsible for the views of publicists or government officials in which they did not participate.

It also was for the judge to determine how far the defendant should be permitted to inquire into collateral matters for the purpose of showing that they were hostile or biased in their opinions, or whether the witness offered by the defendant as an expert was sufficiently qualified to give evidence. *Jennings* v. *Rooney*, 183 Mass. 577, 579. *Muskeget Island Club* v. *Nantucket*, 185 Mass. 303. We find nothing in the exceptions indicating that he acted arbitrarily, or that the defendant was unjustly prejudiced. It has long been settled that unless this clearly appears, the decision of the trial judge on questions calling for the exercise of his discretion will not be reversed by this court. *Jennings* v. *Rooney*, 183 Mass. 577, 579, and cases cited. *Carroll* v. *Boston Elevated Railway*, 200 Mass. 527, 533, and cases cited.

*Exceptions overruled.*