COMMONWEALTH *vs.* WILLIAM J. CORCORAN.

COMMONWEALTH *vs.* THERESA DUGGAN & others.

Middlesex.    March 6, 1925. — May 22, 1925.

Present: RUGG, C.J., CROSBY, CARROLL, WAIT, & SANDERSON, JJ.

*Attempt to Extort. Conspiracy. Evidence,* Of intent, Of conspiracy, Relevancy and materiality, Competency. *Witness,* Cross-examination, Corroboration. *Practice, Criminal,* Order of evidence, New trial, Matters preliminary to trial. *Jury and Jurors.*

At the trial of indictments under G. L. c. 265, § 25, charging the defendant, who was an attorney at law, with verbally threatening a certain person to accuse him of the crime of adultery with intent thereby to extort money from him, and also charging the defendant as principal and others as accessories to the same act, where there was evidence of

acts of the defendant and others in the furtherance of a prearranged scheme to trap the person named in the indictment in compromising circumstances with women, it was *held*, that evidence, that the defendants had entered into a general scheme to extort and defraud others substantially by the same means as alleged in the indictment, properly was admitted to show the intent and purpose with which the defendants acted and that the acts charged were part of a common scheme.

At the trial of the indictments above described, there was evidence that, under a plan arranged by the principal defendant after he and another attorney had investigated, through credit agencies, the financial standing of the man named in the indictment, two women, charged as accessories, enticed the man to an apartment, the letting of which the principal defendant had arranged for; that the principal defendant furnished intoxicating liquor for the purpose; that at a prearranged signal an accessory entered and discovered the man and the women in compromising relations; that the principal was sent for and advised the man as an attorney, and another attorney also was sent for to pose as the attorney for the husband of one of the women and threatened to have the man prosecuted; that after feigned negotiations between the attorneys, the principal defendant said to the man, "Well . . . you will either have to settle or you are apt to go to jail"; that the man asserted that he had no money, and that later the principal defendant said to the other attorney that he believed the man was telling the truth when he said he had no money and that he was going to turn him over to his brother and let the brother "get a fee out of him anyway." *Held*, that

(1) A finding was warranted that in the circumstances in which they were uttered the words of the principal defendant to the man constituted a threat to accuse him of the crime of adultery with intent to extort money from him;

(2) The contract between the principal defendant and the credit agency to which he applied for the rating of the man in question, and tickets or requests for information concerning the financial standing of different persons applied for by the principal defendant properly were admitted in evidence, it appearing that the trial judge carefully excluded all tickets or calls for information made by the defendant which were not shown to be relevant to the issue whether a conspiracy or plot had been entered into by the defendant to extort money from the man named in the indictment by means of a threat to accuse him of a crime;

(3) It was proper to refuse requests asking for rulings in substance that no threat to extort money could be found to have been made unless the man alleged to have been threatened "actually, consciously understood that the defendant verbally and maliciously threatened . . . to accuse him of the crime . . . "; and that "There can be no threat to extort money unless the threat is conveyed to the mind of the person alleged to be threatened";

(4) The Legislature did not make the commission of the offence described in G. L. c. 265, § 25, dependent upon the state of mind of the person threatened, and there is no occasion for reading into the statute qualifications not there found;

(5) An instruction to the jury, "it is not necessary, to constitute the crime, that the person who is threatened shall, in fact, be intimidated, provided the threats are such as are calculated to intimidate or put in fear an ordinarily firm and prudent man," *it seems*, was more favorable to the defendant than a correct construction of G. L. c. 265, § 25, warranted;

(6) Verdicts of guilty were warranted;

(7) Exceptions to the refusal of requests for instructions to the jury relating to the bearing and effect of portions only of the evidence were overruled;

(8) It was proper to refuse a request for a ruling that the jury were bound to find that the man named in the indictment was not threatened with prosecution for any crime if they believed his testimony, where it appeared that he had testified to the main facts of the entry of the accessories and the coming of the principal defendant and of the other attorney and in cross-examination had stated that the principal defendant had not threatened him and that there had been no question of money raised; since the question, whether the statement of the principal defendant, which others had testified to, was made was a question of fact for the jury, and the question, whether, if made, it could have been found to constitute a threat, presented a question of law for the court;

(9) The Commonwealth was not bound to prove the exact threatening words alleged in a bill of particulars which it filed: it was sufficient that their substance was proved;

(10) How far the cross-examination of a witness may be relevant to the issue on trial must be left largely to the sound discretion of the trial judge, and his rulings on such questions are not open to revision unless the substantial rights of a party are clearly shown to have been prejudiced, which did not appear in the case at bar;

(11) It was proper to admit in evidence a confession made by one of the defendants to the Attorney General, the question whether the confession was made voluntarily being left to the jury specifically to determine, and they being instructed to disregard it if they found it was not made voluntarily;

(12) A motion to strike out evidence from which it could have been found that, before the commission of the crime for which the defendants were being tried, a plan or scheme had been formed to commit offences of a similar nature, including an attempt to extort money from the person named in the indictment, properly was denied although it did not appear that all the defendants were parties to the former transactions, since it could have been found that the other plots were parts of a fraudulent conspiracy which included the plot described in the indictment;

(13) It appearing from recross-examination of a woman charged as an accessory, who testified for the Commonwealth, that she did not recollect whether she had mentioned, in a previous statement to the Attorney General, an incident which she had testified to in her redirect examination, the Commonwealth properly was allowed to overcome the tendency of such testimony to show that the witness's testimony in redirect examination had been of recent fabrication by showing that she

had related that incident to her attorney previous to testifying before the grand jury.

The order in which evidence is admitted rests in the discretion of the trial judge, to the exercise of which discretion no exception lies.

An exception to a ruling by the trial judge, denying a motion for a new trial supported by evidence which was contradicted, must be overruled.

TWO INDICTMENTS, found and returned on February 19, 1924, the first charging that the defendant Corcoran "did verbally maliciously threaten one Kenneth Merrill, to accuse him of a crime, to wit: adultery, with intent thereby to extort money from the said Merrill," and the second charging the defendant Corcoran as principal to the same crime and the defendants Theresa Duggan, Lillian H. Reese, Thomas Moran, Theodore Bearse and J. Warren Kane, as accessories before the fact.

In the Superior Court, the indictments were tried before *Whiting*, J.

The testimony of Kenneth Merrill, called by the Commonwealth, was as follows: "That he knew the defendant Theresa Duggan, and the preceding witness, Mrs. Reese; that he met them some time in the fall of 1919; that he had been introduced to them by a mutual friend named Gordon; that at some time later he visited them at the apartment at 88 Hancock Street in Cambridge; that he went by invitation, which he received over the telephone; arrived some time in the evening, but did not remember the exact time; that already there were Mrs. Duggan and Mrs. Reese; that when he went there he understood there was a dinner party of some sort to which he had been invited to attend; that he stayed to dinner with the two women; that they had several drinks; that he remembered more drinks afterwards, that he became ill and nauseated, and that he laid down in the bedroom; that he could not recall whether or not the women, or either of them, were in the bedroom; after he had been lying there a short time several men came into the room and represented themselves as police officers; that he was certain he should not be able to recognize any of the men because it was a good while ago and he was in rather an excited condition at the time and he did not believe he would recognize them. After the men came in they repre-

sented themselves as police officers and threatened him with arrest, and made the statement that he should be taken to the station house. One of the women, he thought Mrs. Reese, asked the privilege of calling her counsel, which she did, as he supposed, she put in a telephone call, as a result a man representing himself as her counsel arrived; that that man was called William J. Corcoran; that Corcoran came into the room, looked them over and wanted to know what was going on there; witness told him these men had accused him of being with married women; that the witness' recollection was that he, Corcoran, had some conversation with the different parties in the room; that a short time after that a man who was named Levenson came in, whom the witness believed was supposed to represent the Duggan woman's husband; that the defendant Corcoran had some conversation with him; that he then came back to the witness and said, 'Let's get to Hell out of here,' which he and the witness did; that he then drove the witness in his car as far as Cottage Farm Bridge, where he left him; that he talked with him on the way there in the car about the condition of things over there; worried, as he, the witness, naturally would be under the circumstances, and wanted to know what the outcome would be."

The witness was unable to remember any other conversation with the defendant Corcoran. He paid no money.

In cross-examination, the witness stated that he was at no time threatened by Corcoran and that no question of money was raised.

Other material evidence is described in the opinion. At the close of the evidence, the defendant asked for and the judge gave the following rulings:

"24. If any one fact necessary to a conclusion of guilt on the part of the defendant is inconsistent with the hypothesis of the defendant's guilt, the defendant's guilt has not been established, and you are directed to find a verdict of not guilty.

"25. The jury must give the defendant the benefit of any reasonable doubt, and a greater degree of certainty is required to convict the defendant of a criminal charge than

might satisfy the jury in the ordinary affairs of their business; and if the evidence can be reasonably explained upon any other hypothesis than the defendant's guilt, the jury are instructed to find the defendant not guilty.

"26. The testimony of the witness Levenson is the testimony of an accomplice who admits that he has been promised immunity from prosecution for this alleged crime, and other alleged crimes with which he has been charged, and his testimony is testimony from a corrupt source and should be closely scrutinized and carefully considered and weighed by the jury before returning a verdict on said testimony."

"34. All evidence introduced to show a general plan or scheme has no bearing directly on the main issue as to whether a threat was made to Merrill by Corcoran. Such evidence is to be considered only in determining whether there was such a general plan or not. So that the jury, if they find there was such a general plan or scheme, can consider statements of one of the participants in said general plan or scheme in furtherance of said general plan or scheme as statements binding all other participants in said general plan or scheme; and if they find that there was such a general plan or scheme, that evidence is not to be used in determining the issue whether or not Corcoran threatened Merrill on the occasion as set forth in the indictment and specifications.

"35. If the jury find on all the evidence that there was a general plan or scheme, the existence of such a general plan or scheme has no direct bearing upon the main issue or upon the testimony of Kenneth Merrill that he was never threatened or requested to pay money."

"39. Unless the jury find that the defendant Corcoran threatened one Kenneth Merrill, and made such threat for the purpose of obtaining money or some other valuable thing from said Kenneth Merrill, either by compulsion, by actual force, or by the force of motives applied to the will of said Kenneth Merrill, they should return a verdict of not guilty."

"41. The jury should first consider the question of the guilt of the defendant, William J. Corcoran, on the indictment charging him as principal, and if they find the defendant William J. Corcoran 'not guilty' on said indictment, they

Mass.]  COMMONWEALTH *v.* CORCORAN.  471

must return a verdict of 'not guilty' on all counts as to all defendants charged with being accessories before the fact to the alleged crime charged against William J. Corcoran as principal.

"42. To be an accessory before the fact, the person incited, assisted, procured, counseled or commanded must become a principal in the commission of the contemplated crime as a result of the acts of the person alleged to be an accessory before the fact."

"45. An innocent person, with no knowledge that a felony is to be committed, can not be said to incite or hire or procure or assist or aid or counsel a felony to be committed."

"47. The mere presence of the defendants, Duggan, Kane and Bearse at the time of the commission of the alleged crime is not sufficient to warrant a conviction of the said Duggan, Bearse and Kane, unless the jury find that the presence of the said defendants, Duggan, Bearse and Kane, was with the guilty knowledge that the alleged crime charged in the indictment and bill of particulars was to be committed, and that said presence was for the purpose of assisting and aiding in the commission of the crime alleged."

The defendant asked for and the judge refused to give the following rulings:

"1. On all the evidence the jury are instructed to return a verdict of not guilty.

"2. There is no evidence that warrants the jury to find a verdict of guilty.

"3. Upon all the evidence the jury are not warranted in finding that the defendant in any form of words threatened Kenneth Merrill to accuse said Merrill of any crime with intent to extort money from said Merrill and the jury are accordingly instructed to find a verdict of not guilty.

"4. There is no evidence that the defendant attempted to extort money from Kenneth Merrill by verbally and maliciously threatening to accuse said Merrill of any crime and your verdict must be not guilty."

"6. If the jury find on all the evidence that the witness Levenson was not present at the place where and the time when the defendant is alleged to have committed the offence

charged in the indictment the evidence as to any threat by the defendant given by Levenson must be disregarded by the jury; there is no evidence of a threat by the defendant Corcoran to Merrill and your verdict must be for the defendant.

"7. If upon all the evidence there remains in your minds a reasonable doubt that the witness Levenson was physically present at the time and place the defendant Corcoran is alleged to have verbally threatened Kenneth Merrill you must find the defendant not guilty.

"8. If on all the evidence there is a reasonable doubt that the witness Levenson was physically present at the time and the place where the crime charged in the indictment and specifications thereto is said to have been committed by this defendant you are instructed that there is no evidence warranting a verdict of guilty, and you are instructed to return a verdict of not guilty.

"9. If on all the evidence the witness Levenson in his testimony before you is found by you to be actuated by prejudice and bias against the defendant Corcoran you may consider that in determining whether you believe Levenson's testimony or the weight that should be given it.

"10. The defendant must be found not guilty if on all the evidence you have a reasonable doubt that Kenneth Merrill actually, consciously understood that the defendant verbally and maliciously threatened said Merrill to accuse him of the crime of (1) adultery (2) fornication or (3) lewd and lascivious cohabitation with intent to extort money from said Merrill.

"11. There is no evidence that would warrant the jury in finding beyond a reasonable doubt that Kenneth Merrill actually or consciously at the time and place set forth in the indictment and bill of particulars actually and consciously understood the defendant to verbally and maliciously threaten said Merrill to accuse him of any crime with intent to extort money from said Merrill; and accordingly the jury are directed to find the defendant not guilty.

"12. The crime charged against the defendant in this indictment is not complete or consummated unless and until some threat to accuse of crime was in fact by the conscious

act of the defendant so conceived and executed that Kenneth Merrill consciously understood and appreciated that such threat was in fact made to him by the defendant and unless the jury find this to be the fact on all the evidence beyond a reasonable doubt they are directed to find the defendant not guilty.

"13. The Commonwealth is bound to prove beyond a reasonable doubt that the defendant Corcoran verbally and maliciously threatened to accuse Kenneth Merrill of crime with intent to extort money thereby; and before the jury are warranted in so finding they must find beyond a reasonable doubt that Kenneth Merrill understood and that the language used by the defendant at the time and place where the offense is charged to have been committed was such that Merrill had a mental realization that the defendant was threatening him as set forth in the indictment and the bill of particulars; and you are directed to find a verdict of not guilty unless the Commonwealth has satisfied you beyond a reasonable doubt of the foregoing facts on all the evidence.

"14. There is no evidence except that of Levenson that he was actually present at the time and place where it is charged threats of any kind were made to Kenneth Merrill by the defendant. Unless it is established beyond a reasonable doubt that Levenson was present at such time and place the jury are not warranted on the evidence in finding the offence proved as charged in the indictment or any count thereof and are instructed to return a verdict of not guilty.

"15. On all the evidence the jury must find that the witness Levenson was not present at the time and place the defendant is alleged to have attempted to extort money from Kenneth Merrill by verbally and maliciously threatening to accuse said Merrill of any crime unless the jury find beyond a reasonable doubt that Levenson's own testimony establishes the fact and unless the jury so find there is no evidence that warrants a finding of guilty and their verdict must be for the defendant.

"16. The case will be submitted to you for your consideration in accordance with the well settled principle of law which you are instructed to consider during your deliberations upon

the evidence that the defendant is presumed to be innocent until his guilt is established beyond a reasonable doubt and you are instructed that the fact that the grand jury has returned an indictment against the defendant is nothing for your consideration in passing upon the evidence submitted to you. You are instructed to pass upon the evidence with no other consideration affecting your judgment upon it except the instructions of the court in that regard. You are instructed that the Commonwealth is bound to prove beyond a reasonable doubt every fact that it charges against the defendant in the indictment each count thereof and the bill of particulars filed by the Commonwealth. Failure of the Commonwealth to establish any such fact beyond a reasonable doubt entitles the defendant to a verdict of not guilty which you are directed thereupon to return.

"16A. The jury are instructed to disregard any testimony relative to the so called Curtis case by whatever description the case may have been referred to.

"16B. You are instructed to consider evidence relative only to the Merrill case so called and are instructed to disregard any testimony concerning one Curtis one Korn one Barbour one George Bean or any person whose names appear in the Mercantile Agency Reports and are instructed that none of such testimony is proper competent or material on the issues which the jury are [to] determine. Except as to the credibility of the defendant Corcoran you may not consider such evidence at all and you are not bound to consider it as to that.

"17. In considering the guilt or innocence of the defendant, the jury should consider the conduct of the defendant Corcoran on the morning after the affair in the apartment at 88 Hancock Street, and may determine from his attitude, conduct and conversations with the witness Merrill whether or not there was a threat actually made with the intent to accuse Merrill of a crime for the purpose of extorting money on the evening previous.

"18. If on all the evidence the jury should find that the defendant Corcoran, on the morning after the affair at the apartment on Hancock Street, Cambridge, informed the

witness Merrill that he believed that the episode did not amount to much, and that there would be nothing to the affair, this evidence would be of value in determining whether or not the defendant actually did threaten Kenneth Merrill on the preceding evening at Hancock Street, Cambridge.

"19. In considering the guilt or innocence of the defendant Corcoran, the jury may consider the whole conduct of the defendant Corcoran with Kenneth Merrill, both at the flat at 88 Hancock Street, Cambridge, and at his office in Boston on the following morning.

"20. If the conduct and conversation of the defendant Corcoran with Kenneth Merrill at the defendant's office on the day following the episode in Cambridge raises a reasonable doubt in your minds that threats against Merrill were made by the defendant Corcoran on the preceding day, your verdict must be not guilty."

"23. If the testimony is found by the jury to be such that two conclusions may reasonably be drawn from it, the one favoring the defendant's innocence, and the other tending to establish his guilt, the jury are instructed that they must adopt the conclusion of innocence, and are directed to find the defendant not guilty."

"33. If the jury believe the testimony of Kenneth Merrill, they must find that the defendant Corcoran did not threaten said Kenneth Merrill with prosecution for any crime charged in the indictment or bill of particulars, and should return a verdict of not guilty."

"36. There can be no threat to extort money unless the threat is conveyed to the mind of the person alleged to be threatened.

"37. The jury must find that the words alleged to have been used by the defendant Corcoran were made under such circumstances as to operate, to some extent at least, on the mind of Kenneth Merrill whom it was expected to influence. The words must convey a menace of some kind which came to the knowledge of Kenneth Merrill who was sought to be affected thereby.

"38. If the jury find on all the evidence that Kenneth Merrill had no realization or apprehension of any words or

threats, threatening him with a crime, then the jury must find the defendant not guilty."

"40. There is no evidence that the words alleged to have been used by the defendant Corcoran, as set forth in the indictment and the bill of particulars, were in fact uttered by him."

"44. There is no evidence that the defendants Duggan, Kane and Bearse had any knowledge that William J. Corcoran had ever attempted to threaten or had threatened Kenneth Merrill with any crime with the intent to extort money from said Merrill."

"48. If the jury find that the defendant Kane hired the apartment at the solicitation of Levenson, and not at the solicitation of the defendant Corcoran, they shall not consider the act of the hiring of the apartment as evidence against either the defendant Kane or the defendant Corcoran.

"49. If the jury find that the acts of the defendant Corcoran were for the purpose of assisting the witness Levenson in an attempt by the witness Levenson to extort money from one Kenneth Merrill by threats, then the defendant Corcoran is not a principal, and must be found not guilty."

The defendant Reese pleaded guilty. The defendant Moran was not at the bar. The defendant Bearse was found not guilty. The defendants Corcoran, Duggan and Kane were found guilty and alleged exceptions.

G. L. c. 265, § 25, reads as follows:

"Whoever, verbally or by a written or printed communication, maliciously threatens to accuse another of a crime or offence, or by such communication maliciously threatens an injury to the person or property of another, with intent thereby to extort money or any pecuniary advantage, or with intent to compel the person so threatened to do any act against his will, shall be punished by imprisonment in the state prison for not more than fifteen years, or in the house of correction for not more than two and one half years, or by a fine of not more than five thousand dollars, or both."

*J. P. Walsh,* for the defendants.

*R. T. Bushnell,* Assistant District Attorney, for the Commonwealth.

CROSBY, J.   The defendant in the first case was charged in the first count of the indictment, under G. L. c. 265, § 25, with verbally threatening one Kenneth Merrill to accuse him of the crime of adultery with intent thereby to extort money from said Merrill.   The Commonwealth relied on the first count only.   On the second and third counts, the court directed verdicts for the defendant; he was found guilty on the first count.

In the second case, the defendant Corcoran was charged with the same offence as in the first, and the defendants Theresa Duggan, Lillian H. Reese, Thomas Moran, Theodore Bearse and J. Warren Kane were charged jointly as accessories before the fact to the threatening by Corcoran of Kenneth Merrill to accuse him of the crime of adultery with intent to extort money.   The Commonwealth relied only on the count in the indictment which charged these defendants with the crime of being accessories before the fact to the crime alleged to have been committed by the defendant Corcoran.   The defendant Reese pleaded guilty after the empanelling of the jury; Moran was not present at the trial; Bearse was found not guilty; and the defendants Duggan and Kane were convicted.

The case is before this court on exceptions of the defendants Corcoran, Duggan and Kane.   Each filed a motion for a bill of particulars, and specifications were given by the Commonwealth.

The Commonwealth offered evidence tending to show that the offence was committed in November, 1919 (the exact date did not appear), in an apartment at 88 Hancock Street in Cambridge.   There was evidence that the apartment was rented by the defendant Kane from Ada Wall in the preceding September; that by previous arrangement between Corcoran and one Harry E. Levenson and the other defendants above named, Merrill was induced to visit the apartment and there enter a bedroom with the defendants Duggan and Reese; that at a certain time by a previously arranged signal, the other defendants charged as accessories entered, and claimed to have detected Merrill in the commission of a crime; that the defendant Corcoran was sent

for in accordance with a prearranged scheme and soon afterwards appeared and committed the offence charged. The Commonwealth offered evidence to show that the defendant Duggan participated in the crime and assisted Corcoran in enticing Merrill to the apartment; that Kane with others entered it when Merrill was found there; that Kane was employed by Corcoran in his office in 1919 and participated in the plot to entrap Merrill. The defendant Reese, who was called and testified as a witness, was promised immunity by the district attorney if she would testify. Levenson, who was called as a witness by the Commonwealth, testified that he was promised immunity in the cases on trial and in certain other cases in another county where he had previously pleaded guilty.

The Commonwealth offered evidence to show that for a considerable period of time before the alleged crime was committed the defendants and others, including Levenson, had entered into a general conspiracy to entrap men in compromising situations with women, and when found under such conditions to extort from them money under threat of arrest. Evidence to show such conspiracy and plots was admitted, subject to the exception of the defendants. It is well established that evidence which merely tends to prove that defendants have committed similar offences is not admissible. But evidence tending to show that the defendants had entered into a general scheme to extort and defraud substantially by the same means, as appears in the present case, is admissible to show the intent and purpose with which they acted and that the acts charged were part of a common scheme. *Commonwealth* v. *Choate,* 105 Mass. 451. *Commonwealth* v. *Scott,* 123 Mass. 222. *Commonwealth* v. *Blood,* 141 Mass. 571. *Commonwealth* v. *Dow,* 217 Mass. 473, 480. *Commonwealth* v. *Farmer,* 218 Mass. 507. *Commonwealth* v. *Riches,* 219 Mass. 433, 439.

The defendant Corcoran and the witness Levenson were attorneys at law, practising in Boston at the time the alleged offence was committed. Levenson testified that he knew the defendant Corcoran, and became acquainted with the defendant Kane in 1916; that he became acquainted

with the defendant Duggan in 1912 or 1913; that the defendant Moran was at one time employed as a chauffeur by Corcoran; that at the first conversation he (the witness) had with Corcoran relative to the alleged crime the latter said to him, "we had better get an apartment in Middlesex County"; that either he or Corcoran telephoned at that time and asked Mrs. Duggan to come to Corcoran's office; that she came there that day and Corcoran told her to go out and look for an apartment in Cambridge, "to find an apartment in some house that was furnished, preferably in the back, with no elevator, and where there was no telephone operator on in front"; that afterwards, as she did not find one, Corcoran told her, "We would go out ourselves and look for an apartment"; that Corcoran, Kane, one Rothschild, the witness, and two or three others went to Cambridge to look for an apartment; that they stopped at 88 Hancock Street and Corcoran sent Kane to see if there was a vacant apartment; that Kane reported to Corcoran and the witness that there was a good apartment; and that it was left that Kane was to hire it.    This witness further testified that the apartment was hired, and that Corcoran or Kane told him that they sent Mrs. Duggan to look it over and gave her money to rent it; that he [Levenson] paid one half the rent; that after Mrs. Duggan went there Corcoran asked the witness if he knew of any case "we could get to work on"; that he told Corcoran that Mrs. Duggan and Mrs. Reese had spoken of a man named Merrill; that Corcoran told him to get the full name and business address of Merrill and said, "You can draw a report through the Credit Reporting Agency and I will draw a report through Dun's and if we find him right, why we will take him."

There was further evidence to show that the witness and Corcoran were subscribers respectively to these two mercantile agencies, and that they obtained reports on the credit and responsibility of Merrill; that Corcoran talked with one Lyons about the reports.    The witness testified that later he talked with Corcoran, Mrs. Duggan and Mrs. Reese at Corcoran's office; that Corcoran said to Mrs. Duggan, "There is no need of going over this thing with

you. You understand it. You have been through it. Go ahead and do the same thing and use your own discretion about the matter"; that Lyons asked Mrs. Reese if she had an ice card at the apartment, and on being told she had he said, "When you are ready, or five minutes before you are ready, push the ice card under the door in the hallway and we will come in five minutes later," and she answered, "All right, Mike. I understand. It's nothing new"; that "on the morning of the day of the raid Corcoran told him [Levenson] that Mrs. Reese had telephoned that they had no liquor at the apartment . . ."; that Corcoran called Kane in and told him to go out to his (Corcoran's) house and get two quarts of liquor and take it to the apartment; and that Kane took the keys and left.

This witness further testified, in substance, that he was told by Corcoran to be at the Copley Square Hotel, as he had arranged with Mrs. Reese and Mrs. Duggan to telephone him (Levenson) just after the raid, and that he would be somewhere in town; that he received a telephone call that night about nine o'clock, at the Copley Square Hotel, from the defendant Moran, as a result of which he went to the apartment at 88 Hancock Street; that when he arrived he found Merrill and Corcoran in conference; that Moran, Bearse and Kane were there, and Mrs. Duggan and Mrs. Reese were in the apartment partially dressed; that the following conversation took place: Moran said to him, "We got the goods on Mr. Merrill and Mrs. Duggan, and following your instructions I was going to take them to the station house; but Corcoran here asked me to wait until he could talk the matter over with you, so I telephoned you. . . . Corcoran broke in and said, 'Well, can't we take this matter up?' I turned to Merrill and said, 'Well, they have got the goods on you, haven't they?' And he said, 'Yes, they have caught me with the goods,' . . . 'But can't this be fixed up somehow?' . . . Corcoran first said *to* me, 'Who do you represent?' And I said I represented Mrs. Duggan's husband. And he said, 'Well, what do you want to do about it?' I said, 'Well, there is only one thing to do, — have them taken to the station house, and if they are con-

victed, I will see what I have got to do about it afterwards.'
. . . Finally, Mr. Merrill broke in and said, 'Well, can't I
straighten this matter up?  What is there to it?'  I said,
'Well, what do you want to do?'  He left me and went with
Corcoran to another room, and they had some conference.
Corcoran came back to me, and in the presence of Merrill
said, 'Well, can't we settle this thing?'  I said, 'Yes, we can
settle this.'  Merrill says, 'I haven't any money.'  I said,
'That isn't what my men report to me.'  I said, 'You have
been here before, and we have looked you up, and in the
report that I get I find that you are a wealthy man.'  He
said, 'That isn't so. . . . As a matter of fact, I haven't any-
thing to speak of . . . '  Corcoran then turned to him and
said, 'Well, Mr. Merrill, you will either have to settle or
you are apt to go to jail.'  Merrill said, 'Well, I would like
to think this thing over.  I haven't any money, but I want
to talk it over with some friends.'"

There was further evidence that Corcoran agreed to act
as attorney for Merrill and that the latter went to Cor-
coran's office the next day; that on that day Corcoran told
Levenson that he felt Merrill was telling the truth when he
said he had no property and that he was going to turn him
over to his (Corcoran's) brother Leo to "let Leo get a fee
out of him any way."  Levenson also testified that Mrs.
Duggan and Mrs. Reese later came to his office and inquired
about the Merrill case and said they needed money, and
that he took them to Corcoran's office and the latter gave
Mrs. Reese some money.

The foregoing and other evidence offered by the Common-
wealth, if believed by the jury, warranted a finding that the
defendant Corcoran entered into a scheme or plot to extort
money from Merrill by threatening to accuse him of the
crime of adultery, as charged in the indictment.  If, as the
jury could have found, Corcoran said, "Well, Mr. Merrill,
you will either have to settle  or you are apt to go to jail,"
a finding would have been justified that it was a threat to
accuse Merrill of the crime with intent to extort money from
him.  This court has said that "Such threats might often
be expressed in very general or vague terms without indi-

cating the precise nature of the accusation or degree of crime intended to be embraced within the language used, and yet be equally efficacious in compelling the giving of money or the doing of some other act to the injury or prejudice of the person to whom it was addressed." *Commonwealth* v. *Murphy*, 12 Allen, 449, 450. The language used, in view of the attendant circumstances, could have been found to have consisted of a threat to charge Merrill with the crime of adultery.

The contract between Corcoran and the Dun company was admissible in evidence. The subscriber's tickets or requests for information concerning the financial standing of different persons, applied for by Corcoran, so far as admitted, were also competent. The information so requested could have been found not to have been sought for a legitimate purpose, but to obtain information to enable the defendant to extort money by threats to accuse other persons of crime. The court carefully excluded all tickets or calls for information made by the defendant which were not shown to be relevant to the issue whether a conspiracy or plot had been entered into by the defendants to extort money from Merrill by means of threatening to accuse him of a crime. If such a plan or scheme was found to have been formed by the defendants, all the statements and acts of each in the furtherance of the common purpose were competent as against the other. *Commonwealth* v. *Blood, supra. Commonwealth* v. *Scott, supra. Commonwealth* v. *Smith,* 163 Mass. 411. *Commonwealth* v. *Kelly,* 186 Mass. 403. *Commonwealth* v. *Clancy,* 187 Mass. 191. *Commonwealth* v. *Stuart,* 207 Mass. 563.

The defendants in various requests for instructions asked the court to rule in substance that no threat to extort money could be found to have been made unless Merrill "actually, consciously understood that the defendant verbally and maliciously threatened said Merrill to accuse him of the crime . . . "; and that "There can be no threat to extort money unless the threat is conveyed to the mind of the person alleged to be threatened." These requests were refused and the defendants excepted. Upon this question the court

instructed the jury that "The offence is not made by the statute to consist in the effect, which the threats may have had upon the person, or in the fact, that property was thereby obtained, but in maliciously threatening to accuse him of an offence, or to injure his person or property, with intent to extort money or pecuniary advantage, or with intent to compel him to do an act against his will. So that it makes no difference whether, as a matter of fact, that threat, that statement, had any effect upon the mind of Merrill. If it was such a statement that it would have had the effect of a threat upon the mind of the ordinary person, the law is concerned, in this regard, with whether it would have affected the ordinary person . . . it is not necessary, to constitute the crime, that the person who is threatened shall, in fact, be intimidated, provided the threats are such as are calculated to intimidate or put in fear an ordinarily firm and prudent man."

Although it was said in *Commonwealth* v. *Coolidge*, 128 Mass. 55, at page 58, that "It is not necessary to the consummation of the offence that the money be absolutely extorted, or that the party threatened should be in any manner defrauded or injured," the precise question here presented has not been considered or determined by this court.

The gist of the offence described in the statute is the attempt to extort money. *Commonwealth* v. *Goodwin*, 122 Mass. 19, 33. If the threat be of the kind referred to in the statute, and is made with the intent thereby to extort money, or with the intent to accomplish any of the other objects mentioned therein, the crime has been committed. The language is explicit and is not subject to any exceptions or qualifications. The Legislature did not make the commission of the offence dependent upon the state of mind of the person threatened, and there is no occasion for reading into the statute qualifications not there found. If it had been intended that to constitute the offence the person threatened was intimidated or must have understood and appreciated the fact that he was so threatened with the intent to extort money from him, or to accomplish any other purpose set forth in the statute, it is a rational inference that it would have

been so declared. *People* v. *Thompson*, 97 N. Y. 313, 318. See also *State* v. *Bruce*, 24 Maine, 71.

The instructions given upon this branch of the case, although following *State* v. *Stockford*, 77 Conn. 227, and *State* v. *McGee*, 80 Conn. 614, were more favorable to the defendants than a correct construction of the statute warranted. Accordingly the exceptions to the denial of requests numbered ten, eleven, twelve, thirteen, thirty-six, thirty-seven and thirty-eight must be overruled.

As the evidence, if believed, justified a finding that the defendant Corcoran threatened to accuse Merrill of the crime of adultery with intent to extort money, and that the defendants Duggan and Kane aided and assisted acts of Corcoran, none of them were entitled to a directed verdict. It follows that the first, second, third and fourth exceptions cannot be sustained.

The defendants' sixth, seventh, eighth, fourteenth and fifteenth requests are to the effect that if Levenson was not present at the apartment when the alleged crime was committed, then any evidence from him of a threat made by Corcoran must be disregarded and a verdict rendered for the defendants. It is plain that these requests could not properly have been given. Corcoran was the only one who testified that Levenson was not present in the apartment on the night in question. It was for the jury whether his testimony of what Corcoran said to Merrill was true; unless he were present he could not have heard it; if he was present it still was a question of fact whether Corcoran threatened Merrill as testified to by Levenson. Upon this the judge instructed the jury: ". . . unless you find that the defendant Corcoran threatened Kenneth Merrill, and made such threat for the purpose of obtaining money from the said Kenneth Merrill, either by compulsion, by force or by the force of motives applied to the will of said Kenneth Merrill, you should return a verdict of 'Not Guilty.'" The refusal to give these requests was not erroneous.

The ninth request was covered by the charge. The jury were told they were to weigh the evidence carefully as to all the interested parties, giving to the testimony of each the

weight that ought to be given it. Besides, this request was also covered by the defendants' twenty-sixth request, which was given.

The requests 16A and 16B could not properly have been given. The trial judge expressly excluded all testimony relating to the Barbour case, so called. The evidence admitted in the cases of Curtis, Donovan, Korn, Bean and others could have been found to relate to the obtaining of money under circumstances somewhat similar to those charged in the case at bar. This evidence was competent to show a general plot or scheme to obtain money by threats to accuse persons of a crime; and also, as bearing upon the credibility of the testimony of the defendant Corcoran so far as he denied having had anything to do with those cases.

The refusal to give in terms the seventeenth, eighteenth, nineteenth and twentieth requests presents no reversible error. They refer to the conduct and statements of the defendant Corcoran on the night the alleged crime was committed and on the following day. The court was not required to charge upon particular parts of the evidence. The rights of the defendants were fully protected by the instructions given.

The twenty-third request was in substance covered by the giving of requests twenty-four and twenty-five, as well as by parts of the charge.

If the jury believed the testimony of Merrill, they were not bound to find that he was not threatened with prosecution for any crime. Whether the evidence of statements alleged to have been made to him by Corcoran could have been found to constitute a threat, presented a question of law for the court. It follows that the thirty-third request could not properly have been given.

The fortieth request was rightly denied. The bill of particulars filed in the case against the defendant Corcoran, stated that the Commonwealth was unable to specify the exact words used which constituted the threat charged, but in substance they were that one Merrill had committed a crime, and that if he did not pay a sum of money he would be prosecuted. The Commonwealth was not bound to

prove the exact .words alleged in the bill of particulars; it was sufficient if the substance was proved. *Commonwealth* v. *Robertson*, 162 Mass. 90, 96. *Commonwealth* v. *Haywood*, 247 Mass. 16, 19. The evidence offered tended to prove that the defendant Corcoran threatened Merrill substantially as alleged. The refusal to give the forty-fourth, forty-eighth and forty-ninth requests was not erroneous. If, as could have been found, the defendants and Levenson were engaged in a common conspiracy or scheme as alleged, the acts of each were evidence of knowledge and participation therein by the other.

During the course of the trial a large number of exceptions to the admission and exclusion of evidence was saved by the defendants. Although they have not all been referred to in detail, all have been carefully considered with the result that we are unable to find any error of law in the manner in which they were dealt with by the presiding judge.

The questions excluded on cross-examination show no reversible error. How far the cross-examination of a witness may be relevant to the issue on trial must be left largely to the sound discretion of the court; such questions are not open to revision unless the substantial rights of a party are clearly shown to have been prejudiced, which does not appear in the case at bar. *Jennings* v. *Rooney*, 183 Mass. 577, 579. *Commonwealth* v. *Phelps*, 210 Mass. 109, 114. *Commonwealth* v. *Gettigan, ante*, 450.

The admission of the so called confession of Mrs. Duggan made to the attorney general was not erroneous. It was admitted only as against her, and while the court found in the first instance that it was made voluntarily, he left that question to the jury ultimately to decide, and specifically instructed them to disregard it if they found otherwise. This was in accordance with correct practice.

A motion was filed by the defendant Corcoran that all evidence introduced in rebuttal by the testimony of Harry E. Levenson with reference to the so called Curtis episode be stricken from the record, and that the jury be further instructed to disregard all evidence offered by the Commonwealth for the purpose of showing any alleged general

scheme or plan to extort money. There was evidence from which it could have been found that before the crime for which the defendants were being tried a plan or scheme had been formed to commit offences of a similar nature, including an attempt to extort money from Curtis and others. While it did not appear that all of the defendants were parties to the former transactions, yet if, as could have been found, these other plots were parts of the same fraudulent conspiracy, as alleged in the present case, the evidence was admissible if some of the defendants were parties to the earlier transactions; as the others could be found to have later joined while the conspiracy was still pending, and in furtherance of its criminal purpose. *Commonwealth* v. *Stuart*, 207 Mass. 563, 567. *Commonwealth* v. *Riches*, 219 Mass. 440, 442. The rulings respecting evidence of other plots to extort money by threats, and the instructions with reference thereto, were without error. The motion was rightly denied.

On redirect examination of the witness Reese she testified that on the afternoon of the day when the alleged crime was committed the defendant Kane brought to the apartment a quart of liquor. On recross-examination by the defendants' counsel, she testified that she did not recollect whether she mentioned this incident to the attorney general in her statement to him previously made. She also testified that she did not remember when she told the district attorney that Kane had brought liquor to the apartment. The cross-examination relating to this subject had a tendency to impeach the witness and to show that her testimony of the bringing of the liquor to the apartment was a recent fabrication; and it is admitted by the defendants' counsel that this was the purpose of the cross-examination. In these circumstances the Commonwealth was allowed to show by one Crafts, who had acted as attorney for the witness, that she had consulted him before testifying before the grand jury in this case; that she told him at that time that Kane brought liquor to 88 Hancock Street on the day of the evening Merrill was there. This evidence was competent to show that her testimony was not a recent invention, and was admitted by the court for that purpose only. *Griffin* v.

*Boston,* 188 Mass. 475, 477. *Commonwealth* v. *Tucker,* 189 Mass. 457, 479. *Commonwealth* v. *Marshall,* 211 Mass. 86, 90. *Commonwealth* v. *Williams,* 244 Mass. 515, 520. The objection that the act of Kane in bringing liquor to the apartment was inadmissible because not specified in the bill of particulars cannot be sustained. Mrs. Reese's testimony to that effect was admitted without objection or exception having been seasonably made. We do not mean to intimate, however, that it was necessary that this act should have been specified in the bill of particulars to render it admissible.

The order in which evidence is admitted rests in the discretion of the trial judge, to the exercise of which discretion no exception lies. *Commonwealth* v. *Piper,* 120 Mass. 185, 187. *Commonwealth* v. *Dorr,* 216 Mass. 314, 319, and cases cited.

The defendants filed a motion for a new trial which motion, as amended, set forth five grounds, and in support thereof several affidavits were filed. The motion was denied and the defendants excepted. The first ground stated as the basis for a new trial was that the rights of the defendants were prejudiced by the remarks of an assistant district attorney made in an argument before a jury in another case previously on trial, and within the hearing of the jurors drawn in the present case. The record shows that before the jury was empanelled a conference took place in the presence of the judge, and the defendants' counsel directed the attention of the court to the remarks so alleged to have been made by the assistant district attorney; after discussion the judge stated he intended to address the jury respecting their duties before the trial began, and outlined in a general way what the nature of those remarks would be; this was apparently satisfactory to counsel for the defendants, and the jury were instructed accordingly. In these circumstances the court was not required to hear either evidence or arguments on this part of the motion.

As to the second and third grounds stated in the motion, the court said he would hear such evidence as either side desired to present relative to the facts set forth in the affidavits. Several witnesses testified to the effect that one

or two jurors had been followed by detectives employed by the Commonwealth and were thereby intimidated and coerced to finding the defendants guilty; that two other jurors had expressed an opinion before the trial that the defendants were guilty. Evidence was offered by the Commonwealth to show that the employment of detectives by the Commonwealth did not intimidate the jurors but was done for their protection. The Commonwealth also offered evidence which tended to show that the testimony of certain witnesses who had testified in support of the motion was false. It was a question of fact for the court, in the exercise of a sound judicial discretion, to decide whether a new trial should be granted upon the evidence presented. There is nothing to indicate that such discretion was improperly exercised; he may have disbelieved the witnesses who were called to testify in support of the motion; he saw them on the witness stand and had opportunities for determining their truthfulness and reliability. *Commonwealth* v. *White*, 147 Mass. 76. *Commonwealth* v. *Best*, 181 Mass. 545. *Commonwealth* v. *Dascalakis*, 246 Mass. 12, 25.

The fourth ground upon which the defendants contend that a new trial should be granted is that in the selection and empanelling of the jurors "a discrimination was made by the government in its challenges of certain jurors which said challenges deprived the defendants of a trial by such a jury as is intended to be drawn and comprehended by the Constitution to wit, a jury of the peers." There is nothing in the record to show upon what facts the defendants relied to sustain this allegation in the motion. It cannot, therefore, be determined that the defendants did not obtain a fair and impartial trial for the reasons stated, or that the court erred in refusing to grant the motion on this ground.

The fifth ground alleged is that, as the defendant Reese had agreed with the district attorney to plead guilty before the jury was drawn and was to receive immunity and that she did not so plead until after the jury was empanelled, and that notwithstanding these facts the Commonwealth "exercised the right of peremptory challenges in the case of Lillian Reese . . . knowing full well that said Reese was to

plead guilty," this gave to the Commonwealth two more peremptory challenges than could be exercised by the defendants and "'gave to the government at the outset an additional power of choice and made the right of the Commonwealth relatively more valuable, while the defendants' similar right was made relatively less valuable,' and was . . . injurious to the rights of the defendants to a fair trial." Upon this question the following evidence was introduced. Frederick C. Bean, clerk of the criminal session, testified that after the jury was empanelled, the defendant Reese pleaded guilty; that his recollection was that the Commonwealth "exercised seven or eight challenges; that he had no record of the number challenged by either side; that he was sure the government did not challenge nine, and . . . [was] very sure it was not over eight." Percy J. Gould, a witness called by the defendants, testified that he made a record of the challenges exercised by the Commonwealth, and that according thereto the Commonwealth exercised nine challenges and the defendants eight. There were four defendants actually placed on trial, namely, Corcoran, Duggan, Kane and Bearse, which entitled each side to eight peremptory challenges. G. L. c. 234, § 29. If the Commonwealth did not actually use more than eight, it acted within its rights. It was the duty of the clerk to draw the names of the jurors out of the box and call each name as drawn. In so doing he was acting in his official capacity as clerk of the sitting, and while he kept no record of the peremptory challenges, he testified that he was "very sure" the Commonwealth did not challenge over eight. On the other hand, the witness Gould testified that he kept a record of the challenges and that the Commonwealth exercised nine challenges. It does not appear that Gould acted in any official capacity in counting and keeping a record of the challenges, or for whom he so acted, if for any one. The presiding judge saw these witnesses and had an opportunity to judge of the honesty, accuracy and reliability of their testimony. Their testimony presented a question of fact. If, as the judge could have found, but eight peremptory challenges were exercised by the Commonwealth, it exer-

cised the right given it by statute, and the defendants have no ground for complaint. It is plain that no error of law appears in this respect. In view of what has been said, it is unnecessary to decide whether, as matter of law, the substantial rights of the defendants would have been prejudiced if it had appeared that the Commonwealth had challenged peremptorily a number in excess of that to which it was entitled. It follows that the exceptions to the denial of the motion for a new trial must be overruled.

Every question raised on this record has been considered. No error of law is disclosed. The presiding judge, in his desire to guard carefully the rights of the defendants, in several instances excluded evidence favorable to the contention of the Commonwealth which might properly have been admitted. His allusions to the testimony were full and fair to the Commonwealth and to the defendants. In the course of the charge much of the testimony which had an important bearing upon the questions to be determined by the jury was read to them that they might be aided in their deliberations to arrive at a just verdict. Many of the requests for rulings were embodied in the instructions given. Those which were refused for the reasons before stated could not properly have been given. The denial of the motion for a new trial shows no error of law; so far as it presented questions of fact, it was within the discretion of the judge, and nothing appears to show an abuse of such discretion.

As no error of law is disclosed by the record, the entry must be

*Exceptions overruled.*