COMMONWEALTH *vs.* VAHEY VANETZIAN.

Middlesex.    March 7, 1966. — April 4, 1966.

Present: WILKINS, C.J., SPALDING, CUTTER, SPIEGEL, & REARDON, JJ.

*Homicide. Practice, Criminal,* Double jeopardy; Exceptions: whether error harmful; Charge to jury. *Error,* Whether error harmful. *Law or Fact. Evidence,* Judicial discretion, Of identity, Admissions and confessions.

Where the victim of a robbery at gunpoint received a bullet wound which brought about a severe infection culminating in his death about six months after the robbery, a proceeding against the robber for murder of the victim was not barred on the ground of double jeopardy by a conviction of the robber, prior to the victim's death, for assault and battery upon the victim by means of a dangerous weapon. [493–494]

Prejudice to the defendant at a criminal trial did not appear through the admission in evidence of certain testimony as to a conversation between the defendant and a police officer claimed by the defendant to show that they had met before and to suggest to the jury his involvement in some prior criminal activity. [494–495]

No error was shown at a criminal trial in the exclusion, during cross-examination by the defendant, of a question already in substance answered satisfactorily to him by the answers to questions previously asked of witnesses by him. [495–496]

Error was not shown at a criminal trial in a refusal of instructions requested by the defendant as to subject matters on which the judge gave correct instructions, although in more general form than that of the requests. [496]

Admission at a murder trial of certain articles of clothing alleged to have been worn by the victim of the murder was not shown to have been error on the ground of inadequate preliminary identification of the articles. [496]

In a criminal case arising out of a robbery in a store, evidence that the manager of the store, upon identifying the defendant in a police lineup, said "This is the man" was admissible. [497]

INDICTMENT found and returned in the Superior Court on May 4, 1960.

A plea of autrefois convict was heard by *Paquet,* J., and the case was tried before him.

*Lyman C. Sprague (Robert U. Holden & Frank J. Opie* with him) for the defendant.

*Francis K. Monarski,* Assistant District Attorney (*Ruth I. Abrams & Anthony J. Di Perna,* Assistant District Attorneys, with him), for the Commonwealth.

SPALDING, J. The defendant was found guilty of murder in the first degree of Charles Dionisio with a recommendation that the sentence of death be not imposed. G. L. c. 265, § 2. The case comes here by appeal under G. L. c. 278, §§ 33A–33G, with numerous assignments of error.

The jury could have found the following: On the evening of October 23, 1959, the defendant entered a grocery store in Watertown where Dionisio, aged twenty-five, was employed as a clerk. At gunpoint, the defendant compelled Courtney, the manager of the store, to hand over the money contained in the cash register. He then ordered Courtney to accompany him to the safe, and shortly thereafter became involved in a scuffle with Dionisio. There was no evidence as to precisely how the struggle began, but during its course two shots were discharged into Dionisio. The defendant then broke free from the victim, who at this point held the gun and was endeavoring to restrain him, and ran out of the store.

Dionisio was admitted that evening to the Mount Auburn Hospital in Cambridge and underwent emergency surgery. One bullet had entered the upper right side of his abdomen, then had passed through his intestines and out through his back. The other had passed through his right thigh. In the period following the operation, a severe infection (peritonitis) caused by the escape of bacterial matter from the intestines developed in his peritoneal cavity. In spite of

the numerous procedures employed to combat this condition, the infection spread, resulting in the formation of four extensive abscesses. Three more operations were performed in an attempt to save Dionisio's life, the last on April 7, 1960, during which a large segment of his intestines was removed. Dionisio died on April 13, 1960, slightly less than six months after the assault.[1] The opinion of the surgeon who performed the autopsy was that he died "as the result of multiple intra-abdominal abscesses, bronchopneumonia, and left empyema due to gunshot wound of the abdomen with perforations of the colon."

In November, 1959, prior to the victim's death, the defendant was indicted for assault and battery upon Dionisio by means of a dangerous weapon, and for other crimes connected with the robbery. There is no question that these indictments arose out of the same set of circumstances which occasioned the present indictment. The defendant pleaded guilty to the November, 1959, indictments and was sentenced.

Because of his prior conviction for the assault and battery, the defendant entered a plea of autrefois convict to the present indictment for murder. The plea was denied, subject to the defendant's exception. At the close of the evidence motions were made for directed verdicts on all the possible crimes for which the defendant could have been convicted under the indictment (ranging from simple assault and battery to first degree murder). The judge granted the motions with the exception of those relating to first and second degree murder, and the defendant excepted.

1. Several of the defendant's assignments (1, 19, 20, 21, 23, 30 and 31) present the question whether the prior indictment and conviction for assault and battery by means of a dangerous weapon bar the present proceedings. Both the common law and our statutes provide that a person may

---

[1] In this Commonwealth the common law rule obtains that to constitute criminal homicide the victim of the assault must die within a year and a day from the time of the infliction of the mortal wound. *Commonwealth* v. *Macloon,* 101 Mass. 1, 6.

not be twice put in jeopardy for the same offence. See
G. L. c. 263, §§ 7, 8, 8A; c. 277, § 75; *Commonwealth* v.
*Roby,* 12 Pick. 496; *Commonwealth* v. *Burke,* 342 Mass. 144.
But it is clear that this principle can have no application
where, as here, at the time of the first indictment the facts
upon which the second indictment is based had not yet oc-
curred. *Commonwealth* v. *Roby,* 12 Pick. 496. *Diaz* v.
*United States,* 223 U. S. 442, 448–449. *State* v. *Littlefield,*
70 Maine, 452. *Commonwealth* v. *Maroney,* 417 Pa. 368,
371–372. See also *Commonwealth* v. *McCan,* 277 Mass. 199,
202. It is not disputed that Dionisio was still alive at the
time of the defendant's conviction for assault and battery
by means of a dangerous weapon. In the *Diaz* case, *supra,*
p. 449, which is similar to the present in all relevant as-
pects, the Supreme Court of the United States (citing *Com-
monwealth* v. *Roby, supra*) said, "The death of the injured
person was the principal element of the homicide, but was
no part of the assault and battery. At the time of the trial
for the latter the death had not ensued, and not until it did
ensue was the homicide committed. Then, and not before,
was it possible to put the accused in jeopardy for that of-
fense." As for the defendant's argument that the second
trial put him in jeopardy of a second conviction for the
crime of assault and battery, the judge's direction of ver-
dicts for the defendant on all the offences embraced in the
indictment other than murder adequately foreclosed this
possibility. *Commonwealth* v. *McCan,* 277 Mass. 199, 204.
*Diaz* v. *United States,* 223 U. S. 442, 449. *State* v. *Little-
field,* 70 Maine, 452, 460. The question of autrefois convict
was one of law and the judge rightly ruled that the defend-
ant could not argue the point to the jury.

2. In assignments 4 and 5 the defendant challenges the
admission of the testimony of two police officers as to a
conversation held between one of the officers and the de-
fendant just before his arrest. The rulings complained of
occurred in these circumstances. Officer Kelly was asked
if he had overheard a conversation between the defendant
and Lieutenant Sheehan shortly prior to the defendant's

arrest and he replied that he had. He was then asked, subject to the defendant's exception, to state what the conversation was. Officer Kelly testified that Lieutenant Sheehan asked the defendant if he knew him and that the defendant replied, "No, not again." The defendant then moved that this evidence be struck and the motion was denied subject to the defendant's exception. Later, subject to the defendant's exception, Lieutenant Sheehan was asked to give his version of the conversation. He testified that he asked the defendant, "Don't you remember me?" and the defendant said, "Not you again?" To this Sheehan replied, "Yes. It has been a long time." The defendant's motion to strike this evidence was denied, subject to exception.

If this testimony, as the defendant argues, served to inform the jury that the defendant had been involved in some prior criminal activity, its admission over objection was error. *Commonwealth* v. *Stone,* 321 Mass. 471, 472–473. *Commonwealth* v. *Welcome,* 348 Mass. 68. But the nature and circumstances of any prior meeting suggested by this conversation is obscure and the relevance of this testimony to any of the issues being tried was tenuous at best. It would have been the wiser course not to have introduced it. We are not convinced, however, that its admission could have appreciably influenced the jury or tainted their verdict. See *Commonwealth* v. *Smith,* 342 Mass. 180, 187–188.

3. Assignment 17 is based upon the exclusion of a question put during cross-examination by the defendant to the physician who performed the autopsy upon Dionisio. The witness was asked: "So that there is a possibility that this man's bronchopneumonia stemmed from chronic bronchitis?" On objection the question was excluded. There was no error. Just prior to this question the witness was asked: "Can you positively exclude as a cause for the bronchopneumonia chronic bronchitis?" To this he answered: "No, sir." Earlier in the defendant's cross-examination of the medical examiner who had witnessed the autopsy, the witness was asked: "[W]ith relation to bronchopneumonia that you say this . . . man suffered, would chronic bronchitis be a cause of bronchopneumonia?"

He answered: "It is one of the things that may lead to bronchopneumonia." These questions and answers reveal that the defendant was afforded ample opportunity to pursue this subject, and that, in fact, he had already received the desired answers. Moreover, because of the conjectural form of the question (see *Nass* v. *Duxbury,* 327 Mass. 396, 401, and cases cited), the judge was justified in the exercise of his discretion in excluding it. See *Commonwealth* v. *Corcoran,* 252 Mass. 465, 486.

4. Assignments 22, 25, 26, 27 and 28 relate to the judge's refusal to give requested instructions to the jury as to the cause of Dionisio's death and the Commonwealth's burden of proof regarding it. The judge in fact gave correct instructions on both issues, but in a more general form than that of those requested by the defendant. He was not required, however, to discuss every subsidiary fact and possible inference. *Commonwealth* v. *Greenberg,* 339 Mass. 557, 584. *Commonwealth* v. *Monahan,* 349 Mass. 139, 170–171. "Charges would be endless as well as confusing if a judge could be compelled to call attention to every subsidiary fact and every possible inference." *Commonwealth* v. *Polian,* 288 Mass. 494, 499.

5. Another group of assignments (7–12, and 18) deals with the admission in evidence, over objection, of the apron, shirt, and T-shirt allegedly worn by the victim at the time of his injuries. The defendant contends that there was no adequate preliminary identification of these articles prior to their submission to the jury. The testimony revealed that Lieutenant Sheehan retrieved the articles from the hospital to which Dionisio had been admitted, that the perforations in the articles were bullet holes, and that these holes were located in areas roughly corresponding to the victim's wounds. This evidence raised a sufficient likelihood that the articles were those worn by Dionisio on the night in question. There was no error in their admission in evidence. "The lack of positive identification affects not the competency but the weight of the evidence, and the issue of identity was for the consideration of the jury." *Commonwealth* v. *Parrotta,* 316 Mass. 307, 313.

6.    The defendant excepted (assignment 6) to the admission of testimony by a police captain that the store manager, Courtney, upon identifying the defendant in a police lineup, said: "This is the man." This evidence, which appears to have been introduced solely to show a prior identification of the defendant by Courtney, was admissible. *Commonwealth* v. *Locke*, 335 Mass. 106, 112. The argument that this evidence was an attempt to show an admission by silence of one under arrest (see *Commonwealth* v. *Gangi*, 243 Mass. 341, 345) is without merit. There was no evidence that the defendant did or did not reply to Courtney's statement.

7.    On a review of the whole case in all its aspects of fact and law, in accordance with our duty under G. L. c. 278, § 33E, as amended by St. 1962, c. 453, we are of opinion that justice does not require a new trial.

*Judgment affirmed.*