COMMONWEALTH *vs.* GEORGE H. NASSAR.

Essex.    April 4, 1966. — June 7, 1966.

Present: WILKINS, C.J., SPALDING, CUTTER, KIRK, & SPIEGEL, JJ.

*Practice, Criminal,* Examination of jurors; Opening statement by prosecutor; Exceptions: whether error harmful; Appeal with assignments of error; Capital case. *Jury and Jurors. Evidence,* Of identity, Photograph, Matter of common knowledge, On cross-examination, Judicial discretion, Relevancy and materiality, Of previous criminal charge, Of admitted fact, Of bias, Demonstration. *Error,* Whether error harmful.

There was no error at the conclusion of the empanelling of a jury at a murder trial in the denial of the defendant's motions for a declaration of a mistrial and for a change of venue on the ground that the jury were prejudiced by reason of "knowledge . . . of defendant's prior criminal record for the crime of murder" where it was not shown that any member of the jury knew anything of such record before the trial, there appeared to be no merit in a contention by the defendant that the questions to prospective jurors were not sufficiently searching, and it appeared that the judge in all respects was meticulous to secure an unbiased jury.   [40–41]

A statement by the prosecutor in his opening in a capital case, that a police officer "came upon a photograph which he thought looked like the composite" sketch of a suspect in the case, was improper where both the photograph and the sketch were in evidence, but on all the evidence the impropriety was not prejudicial.   [41–42]

A statement by the prosecutor in his opening at a murder trial, that "an identifying witness said to police officers showing her a photograph of defendant, 'That's the man that killed . . . [the victim] in the gas station, '" was not improper.   [41, 42]

It is common knowledge that the "identification files" of the police contain pictures of persons who have previously been connected with criminal activity, and evidence at a criminal trial about the process by which a photograph of the defendant was selected from such files to be shown to identifying witnesses should have been excluded.   [42–43]

There was no error in the denial of a motion for a declaration of a mistrial of a capital case by reason of some writing on the back of an identifying photograph of the defendant where the writing was excluded from the jury's consideration and nothing in statements of the judge and the prosecutor suggested its nature.   [43]

At the trial of a murder case in which a witness had identified the defendant as the murderer from a photograph and had been cross-examined at some length on the accuracy of her identification, there was no abuse

of discretion in excluding the further question to her, "Have you ever on a prior occasion had to identify a person from a picture?" [43–44]

Irrelevant testimony at a trial for murder committed by shooting a man kneeling before the murderer, that the defendant's apartment had been "entered by numerous police officers 'with drawn guns' " and that the defendant had been "placed in handcuffs," was not prejudicial. [44]

It was prejudicial error at a murder trial to permit police officers to testify, before the defendant took the stand, as to a statement by one of the officers to the defendant implying involvement of the defendant in the "same thing" many years before, to which the defendant "nodded." [44–45]

There was no error at a criminal trial in the admission of certain falsified pay envelopes presented by the defendant to his parole officer as relevant to show that the defendant claimed to be working when he was not and that a need for money was a motive for the crime, even though the defendant was willing to stipulate that he had never worked for the employer indicated on the envelopes and "did make [them] up." [46]

It was improper at a criminal trial to permit a witness who had been the defendant's parole agent prior to the crime to testify as to his supervision of the defendant. [46–47]

There was no error at a murder trial in excluding a conversation between a witness who identified the defendant as the one who had committed the murder and an investigator for the defendant in which the witness allegedly said that she had been told not to talk about the case and that there was "additional evidence establishing" the defendant's guilt. [47]

At a trial for murder of the operator of a filling station committed in the sight of a witness in a car stopped in front of the pumps at the filling station, there was no abuse of discretion "in refusing to permit the defendant to be placed in a position adjacent to the car of the witness . . . while the jury viewed this car, to demonstrate physical facts wholly inconsistent with the testimony" of the witness. [47]

The defendant at a criminal trial was not prejudiced by the admission of evidence of a fact which he conceded to be true. [47]

In view of evidence which the defendant at a criminal trial introduced respecting his exemplary behavior and environment after his release on parole from a prison preceding commission of the crime charged, there was no error in the admission of evidence of violations of parole by him for the purpose of impeaching his testimony. [48]

Under G. L. c. 278, § 33E, as amended through St. 1962, c. 453, this court in a capital case considered an additional assignment of error although the defendant did not seek leave to file it within six months after the verdict as required by § 33H. [48–49]

INDICTMENT found and returned on January 8, 1965.

The case was tried in the Superior Court before *Forte, J.*

MOTION to file an assignment of error late filed in the Supreme Judicial Court for the county of Suffolk on December 30, 1965.

The motion was reserved and reported by *Cutter, J.,* without decision.

*F. Lee Bailey* for the defendant.

*John J. Jennings,* Assistant District Attorney, for the Commonwealth.

SPIEGEL, J.  This is an appeal under the provisions of G. L. c. 278, §§ 33A–33G, from a conviction of murder in the first degree.  The case is here on a summary of the record, a transcript of the evidence, twenty-two assignments of error, and a motion to amend the assignments of error which was reserved and reported without decision by a single justice.

On September 29, 1964, about 4:50 P.M., Mrs. Rita Buote, accompanied by her daughter Diane, drove into a filling station run by one Irvin Hilton and stopped in front of the pumps.  They saw a man, standing in front of the lubritorium door, fire several shots into Hilton who was kneeling before his assailant.  The man turned and walked over to the driver's door of the Buote car, crossing diagonally in front of the car.  He attempted to open the door, but Mrs. Buote locked it.  He then tried to shoot the occupants of the car, but his gun failed to fire.  After banging on the car window for a short period of time, he left.

Later that day, police officers showed Mrs. Buote eight to twelve photographs, but she was unable to identify any person in the photographs.  Her daughter was also unable to identify them.  The following day a police officer drew a sketch from the description given him by Mrs. Buote.  Upon completion of the sketch it was shown to Mrs. Buote who stated that it "resembled" the assailant.  The sketch was then published in the newspapers.  Another officer, after seeing a picture of the sketch in the newspaper, "went to the . . . files," and "went through" the drawers containing photographs for almost three hours until he "stopped at one particular photograph."  He took the photograph from the files and together with Sergeant Keenan went to the home of Mrs. Buote, arriving at 7 A.M.  She was first shown the profile view which she said "looked

. . . something like" the man she saw at the filling station. Then she viewed the head-on segment of the photograph and identified it as a picture of the man. Later that morning, Mrs. Buote was shown fourteen to sixteen photographs, one of which was of the defendant, and she selected the defendant's photograph from that group. Mrs. Buote's daughter made similar identifications, and both later identified the defendant at a lineup at the police station.

Based on these identifications, the police obtained warrants for the arrest of the defendant and the search of his apartment. The police found certain pay envelopes and "a pink slip from a printer"[1] on a desk just inside the apartment door. One Francis Touchet, a friend of the defendant, who was in the apartment, told the police that on September 29 the defendant had returned from work at five-thirty or six. Touchet later testified that the defendant was ill and remained in the apartment on September 29.

Assignment 1. The defendant contends that "[t]he trial judge erred in denying defendant's motions, at the conclusion of voir dire, for a mistrial and a change of venue because it had been demonstrated in the course of voir dire that the jury was contaminated by general prejudice against the defendant and specific prejudice arising from knowledge within the jury panel of defendant's prior criminal record for the crime of murder."

Although several prospective jurors who were excused for cause knew of the defendant's record, there has been no showing that any member of the trial jury knew anything of the defendant's prior criminal record before the trial. The defendant argues that the questions put by the judge were not sufficiently searching. However, " '[i]t is clear from our decisions that the questioning of jurors, other than as required by G. L. c. 234, § 28, rests wholly in the discretion of the judge. *Commonwealth* v. *Taylor,* 327 Mass. 641, 646–647. . . .' " *Commonwealth* v. *Monahan,* 349 Mass. 139, 156. Further, whenever defence counsel asked the trial

---

[1] This was a receipt from a printer showing payment for the printing of the envelopes.

judge to put an additional question to a particular juror, the trial judge did so. The defendant accepted each member of the jury and did not even exhaust his peremptory challenges. We are satisfied that "[i]n all respects the judge was meticulous to insure the empanelling of a jury free from bias." *Commonwealth* v. *Kiernan,* 348 Mass. 29, 36.

Assignment 2. The defendant excepted to the statement in the prosecutor's opening that a police officer "came upon a photograph which he thought looked like the composite" sketch of a suspect. Assignment 3. The defendant also excepted to the statement in the opening that "an identifying witness said to police officers showing her a photograph of defendant, 'That's the man that killed Irvin Hilton in the gas station.' "

The defendant cites no authority, and presents no argument, in support of his views on these assignments. Rule 13 of the Rules for the Regulation of Practice before the Full Court (1962), 345 Mass. 787. *Travelers Ins. Co.* v. *Safeguard Ins. Co.* 346 Mass. 622, 623. Instead he states in his brief the following: "We know of no possible authority for the admissibility of a police officer's opinion of likeness in these circumstances; and of no possible authority for the hearsay declaration of the eyewitness viewing a suspect's photograph in his absence. We invite the argument of the commonwealth on these questions, and especially for the justification for making such remarks in an opening statement in a capital case." The foregoing "invitation" could hardly be called an argument. Nevertheless, because of the gravity of the offence charged against the defendant, we deem it advisable to treat with these assignments.

We first discuss assignment 2. "The competency of . . . [the opinion evidence of a nonexpert] rests upon two necessary conditions: first, that the subject matter to which the testimony relates cannot be reproduced or described to the jury precisely as it appeared to the witness at the time; and second, that the facts upon which the witness is called

to express his opinion, are such as men in general are capable of comprehending and understanding." *Commonwealth* v. *Sturtivant,* 117 Mass. 122, 137. *Noyes* v. *Noyes,* 224 Mass. 125, 129. *Commonwealth* v. *Russ,* 232 Mass. 58, 81. Since the sketch and the photograph were in evidence, the opinion of the officer was inadmissible. Our review of the evidence, however, convinces us that the refusal to exclude this incompetent matter in the opening statement of the prosecutor was not prejudicial.

Regarding assignment 3 the defendant did not take exceptions when witnesses testified to their identification of the defendant's photograph prior to the trial. Even if the defendant had excepted, there was no error. As was stated by the Supreme Court of Maryland in a somewhat similar situation, in *Basoff* v. *State,* 208 Md. 643, 651, "We think it is evident that an identification of an accused made by a witness for the first time in the courtroom may often be of little testimonial force, as the witness may have had opportunities to see the accused and to have heard him referred to by a certain name; whereas a prior identification, considered in connection with the circumstances surrounding its making, serves to aid the court in determining the trustworthiness of the identification made in the courtroom." We are of opinion that the prior identification of the photograph was admissible. See *Commonwealth* v. *Locke,* 335 Mass. 106, 112.

Assignments 4 and 8. Each of these raises the issue whether a description of the process by which the police selected the defendant's photograph to show to the Buotes should have been excluded. Assignment 4 refers to the defendant's motion for a mistrial after the prosecutor in his opening statement said that a patrolman, while in the Lawrence police station, "decided to check through some photographs and see if he could find someone that matched . . . [the sketch]. . . . [H]e came upon a photograph which he thought looked like the . . . [sketch]. . . . He took the picture out. . . . The picture was shown to Mrs. Buote." Assignment 8 is an exception to the officer's testi-

mony that he "went to the identification files." It is common knowledge that the "identification files" of the police contain pictures of men who have previously been connected with criminal activity, and, therefore, testimony about the process by which the photograph was selected should be excluded.

Assignment 6. The defendant claims that "[t]he trial judge erred in denying defendant's motion for a mistrial when, through the offer of a photograph clearly indicating the defendant to be a convict the prosecutor and judge made such fact perfectly apparent to the jury despite the strenuous objection of the defendant."

Prior to the admission of the photograph in evidence the prosecutor stated in the presence of the jury that on the back of the photograph of the defendant which he sought to introduce in evidence "there are some things . . . that Mr. Bailey [the defendant's lawyer] may want covered." The judge informed the jury that the writing on the back of the photograph was hearsay and "not evidence worthy of consideration of the jury." The photograph was handed to the jury "with the admonition that . . . [they] not turn the picture over; look only on the face."

The photograph was properly admitted to enable the jury to test the identification made by the Buotes. We find nothing in the statements of the judge or the prosecutor to suggest the nature of the material on the back of the photograph. There was no error.

Assignment 5. These are exceptions to the exclusion of seven questions asked Diane Buote on cross-examination. Subsequently the judge allowed the defendant to ask a series of questions covering substantially the same subject matter although not in the precise form as six of the excluded questions. The remaining question was, "Have you ever on a prior occasion had to identify a person from a picture?" We note that the defendant was permitted to cross-examine the witness at some length on the accuracy of her identification of the person in the photograph. "How far the cross-examination of a witness may be rele-

vant to the issue on trial must be left largely to the sound discretion of the court; such questions are not open to revision unless the substantial rights of a party are clearly shown to have been prejudiced." *Commonwealth* v. *Corcoran*, 252 Mass. 465, 486. *Commonwealth* v. *Granito*, 326 Mass. 494, 496. There was no error.

Assignment 10. The defendant contends that "[t]he trial judge erred by permitting a police officer to testify that the defendant's apartment was entered by numerous police officers 'with drawn guns,' and that the defendant was placed in handcuffs." He argues that this testimony was irrelevant and prejudicial in that it tended "to show that in the view of the arresting officers the defendant was a dangerous individual."

We agree with the defendant that such testimony was irrelevant to any issue at the trial and might well have been excluded. However, it would be unrealistic to expect the police officers to treat a man suspected of this murder as being other than a "dangerous individual." We do not believe the defendant was prejudiced by the admission of this testimony.

Assignments 11 and 16. These are exceptions to the admission (prior to the defendant taking the stand) of statements by police officers which informed the jury that the defendant had previously been arrested for murder. Sergeant Deyermond, one of the arresting officers, testified that "[t]he sergeant [Keenan] said to the defendant, 'George, do you remember me, Sergeant Keenan?' And the defendant answered, 'Yes, sir, I remember you.' And the sergeant stated, 'Well, here we are, George, again, for the same thing.'. . . The defendant lowered his head and nodded affirmatively twice." Sergeant Keenan testified as follows: "I said, 'Hi, George, do you remember me?' He said, 'I can't place you.' I said, 'Do you remember sixteen years ago, George?' And he said, 'Oh, yes.' And I said, 'Same thing as sixteen years ago, George.' And he said, 'Yes.' Pardon me. He didn't say yes. He shook his head in the affirmative."

The Commonwealth appears to argue that the evidence was admissible because the "nod" of the defendant was an admission. We do not agree. All that this served to show was that, sometime in the past, the defendant had been accused of the crime of murder. This evidence was plainly inadmissible. See *Commonwealth* v. *Kosior,* 280 Mass. 418, 423.

Recently, in the case of *Commonwealth* v. *Vanetzian,* 350 Mass. 491, 494–495, we discussed the issue whether certain testimony served to "inform" a jury of a defendant's prior criminal activity. In that case two police officers testified as to a conversation between one of the officers and the defendant. An officer testified that he asked the defendant, "Don't you remember me?" And the defendant said, "Not you again?" To this the officer replied, "Yes. It has been a long time." In that case we held that "the nature and circumstances of any prior meeting suggested by this conversation is obscure." However, we said that "It would have been the wiser course not to have introduced . . . [this testimony]." Unlike that case, here there can be no doubt as to the circumstances of the prior meeting. The testimony of the police officers referring to the "same thing" sixteen years ago plainly informed the jury that the defendant had previously been arrested on a charge of murder. "If this testimony . . . served to inform the jury that the defendant had been involved in some prior criminal activity, its admission over objection was error." Even in a jury waived trial, "evidence of a distinct crime unconnected with that for which the defendant is indicted cannot be received." *Commonwealth* v. *Welcome,* 348 Mass. 68, 70. Although the defendant's prior record would have been admissible to impeach his credibility (G. L. c. 233, § 21), we can only speculate on whether the defendant would have testified if the officers' testimony had been excluded. Such doubt as we entertain must be resolved in favor of the defendant. See *Commonwealth* v. *Welcome,* 348 Mass. 68, 70–71. There was prejudicial error. *Commonwealth* v. *Valcourt,* 333 Mass. 706, 717–718. *Common-*

*wealth* v. *Crehan,* 345 Mass. 609, 615. *Commonwealth* v. *Welcome, supra. Commonwealth* v. *Vanetzian, supra.*

Assignment 12. It is the defendant's contention that "[t]he trial judge erred in refusing to suppress, in admitting testimony on and in receiving into evidence certain falsified pay envelopes presented by the defendant to his parole officer, said envelopes being irrelevant to the charge on trial and prejudicial to the defendant as evidence of his disposition to falsify to authority." The defendant argues that the pay envelopes were illegally seized, and that they were irrelevant to the crime since the defendant was willing to agree that he was not working.

The defendant was also willing to stipulate "that he did make up certain envelopes for the Savin Hill laundry, for which he never . . . worked." We are unable to see how the admission of the envelopes could be prejudicial. In any event, the officers found the envelopes during the course of a lawful search incident to an arrest. The envelopes were relevant to show that the defendant claimed to be working for someone when he was not. Thus, the jury could infer that the defendant was not working and was in need of money and, therefore, had a motive to commit the crime. The defendant's willingness to stipulate to a fact does not preclude the Commonwealth from proving it. *Commonwealth* v. *Miller,* 3 Cush. 243, 251. *Commonwealth* v. *McCarthy,* 119 Mass. 354, 355. *Commonwealth* v. *Valcourt,* 333 Mass. 706, 712.

Assignment 13. The defendant contends that "[t]he trial judge erred in permitting Louis P. Devine, defendant's parole agent, to testify in the face of defense counsel's manifest willingness to stipulate to such testimony, inasmuch as the trial judge thus permitted the prosecutor to make apparent to the jury the fact that the defendant was a parolee and had necessarily been convicted of a crime prior to trial."

The Commonwealth is not compelled to stipulate. The examination of the witness did not directly reveal his position as a parole agent, and such revelation was not neces-

sary. However, when questioned on a conversation with the defendant, the witness stated, "At that time I told him I wanted him to be in every night at 12 o'clock. I also told him I wanted him to furnish me proof of his working for Savin Hill Cleaners." The supervision of the defendant by the witness was not relevant to the case, and the Commonwealth should guard against the repetition of such testimony in a subsequent trial.

Assignments 14 and 20. These are exceptions to exclusion of a conversation between Mrs. Buote and an investigator for the defendant in which Mrs. Buote allegedly said that she had been told not to talk about the case and that there was "additional evidence establishing" the defendant's guilt. We do not think that her refusal to talk suggested a bias greater than that which she could be expected to have after identifying the defendant as the one who committed the murder. We note that when the defendant called Mrs. Buote as his witness, the judge permitted her to testify as to the "additional evidence." There was no error.

Assignment 15. The defendant contends that "[t]he trial judge erred in refusing to permit the defendant to be placed in a position adjacent to the car of the witness Buote, while the jury viewed this car, to demonstrate physical facts wholly inconsistent with the testimony of Mrs. Buote." The defendant's request combined elements of a view and a demonstration. The granting or refusing of a request for a view is within the sound discretion of the trial judge. *Commonwealth* v. *Chance*, 174 Mass. 245, 247. *Commonwealth* v. *Lamoureux*, 348 Mass. 390, 392. G. L. c. 234, § 35. "The ruling of the judge in reference to a demonstration of this kind was plainly discretionary." *Commonwealth* v. *Burke*, 344 Mass. 243, 247. *Commonwealth* v. *Tucker*, 189 Mass. 457, 478. *Commonwealth* v. *Chin Kee*, 283 Mass. 248, 259–260. There was no abuse of discretion.

Assignment 17. This is an exception to the admission of testimony that the defendant did not answer when asked if he was working. Since the defendant conceded that he was not working, we cannot perceive how he was prejudiced.

Assignment 22. The defendant excepted to the admission in evidence of his parole violations for the purpose of impeaching his testimony. The defendant introduced evidence of his life after release from prison. He testified about his friends, his education, and his work with a project concerned with prisoner rehabilitation in which he "was the only formal member of the group that had a criminal record." He stated on redirect examination that he was released on parole as a result of the commutation of his sentence, that a condition of his parole was that he work, and that he had to report regularly to his parole agent. The prosecutor then asked him if he "went out drinking . . . once" and was "called before the Parole Board for that infraction." He was cross-examined concerning his association with other parolees, trips out of the State and out of the country without written permission from the parole board, statements to his parole agent that he was working when he was not, and the possession of a hunting knife. We are of opinion that, in view of the evidence which the defendant introduced regarding his exemplary behavior and environment, these questions were within "the rule that a witness may be cross-examined in the discretion of the judge to test his accuracy, veracity or credibility, or to shake his credit by injuring his character, and for this purpose his way of life, his associations, his habits, his prejudices, his physical defects and infirmities, his mental idiosyncrasies, if they affect his capacity, his means of knowledge, powers of discernment, memory and description, may all be relevant." *Commonwealth* v. *Sacco,* 255 Mass. 369, 439.

The defendant moved to amend his assignments of error on December 30, 1965, more than six months after the verdict. General Laws c. 278, § 33H, provides: "If by mistake, accident or other sufficient cause, the defendant omits to take necessary measures in a case of murder or manslaughter or in any other criminal case subject to sections thirty-three A to thirty-three G, inclusive, for the hearing of the case in the supreme judicial court, any justice of that

court may, upon petition filed with the clerk of the supreme judicial court for Suffolk county *within six months after the verdict* and, upon terms, order that the clerk of the superior court receive for filing the assignment of errors and permit the entry of the appeal in the supreme judicial court'' (emphasis supplied). Although § 33H requires the assignment of errors to be filed within six months, under G. L. c. 278, § 33E, as amended through St. 1962, c. 453, in a capital case this court has ''the whole case for its consideration of the law and the evidence,'' and may consider the matter which the defendant attempted to raise by his belated assignment of error.

Under the assignment which the defendant seeks to argue before us he challenged the portion of the judge's charge concerning alibi evidence. Since this question may arise at a new trial, we briefly treat with it. The charge was taken almost verbatim from the opinion of Mr. Chief Justice Shaw in *Commonwealth* v. *Webster,* 5 Cush. 295, 319, and ''has long been given in such cases in Courts of the Commonwealth.'' There was no error.

We have not discussed one assignment of error as we deem it unlikely that the same question would arise at a retrial. Four other assignments were not argued and are deemed waived. In any event, they are without merit.

The judgment is reversed and the verdict set aside.

*So ordered.*