COMMONWEALTH *vs.* WILLIAM H. REDMOND, JR.

Suffolk. December 1, 1969. — May 1, 1970.

Present: WILKINS, C.J., SPALDING, KIRK, SPIEGEL, & QUIRICO, JJ.

*Evidence,* Impeachment of witness, Of bias, Other offence, On cross-examination, In rebuttal, Corroborative evidence, Of identity. *Witness,* Impeachment. *Practice, Criminal,* Charge to jury. *Constitutional Law,* Due process of law.

At a trial in the Superior Court for armed robbery in a supermarket, where there was testimony by an alibi witness that he met the defendant for the first time in another place at the time of the robbery and that the second time he met the defendant was "at a trial . . . in the . . . District Court," and later on direct examination the defendant corroborated the alibi testimony and voluntarily testified as to his prior convictions and confinement for other crimes, and on cross-examination testified that when he was arrested in the witness's apartment the police seized something and as a result of the seizure the District Court case was brought against the witness in which the robbery defendant testified that the "stuff" seized was his, there was no error in the admission then of his further testimony that the "stuff" seized was "marihuana"; the Commonwealth was entitled to impeach the alibi testimony by showing bias on the part of the witness, even though the commission of other crimes by the witness and the defendant may have been indicated. [337–338]

At a trial for armed robbery, where the court suppressed all evidence of a confrontation of the victim and the defendant at a police station, the victim testified that the defendant was the robber, and the de-

fendant thereafter testified on direct examination that in his presence at the station the victim identified him and also made a statement which impeached the victim's in-court identification, it was held that there was no error in admitting testimony by the victim, upon being recalled by the Commonwealth, that he had made no statement in the defendant's presence at the station and that the victim had identified the defendant there but not in his presence.  [340–341]

Following an adequate and accurate instruction at a criminal trial on the Commonwealth's burden of proof, there was no violation of due process of law in the judge's failure to repeat the same instruction when he came to his instructions on the defence of alibi at the end of the charge and then said, "for the obvious reason that alibi evidence may be readily contrived, the proof to sustain such a defense may be scrutinized with particular care by the jury."  [342–343]

Statement of points to be made clear to a jury at a criminal trial when basing instructions on the defence of alibi on language used in *Commonwealth* v. *Webster*, 5 Cush. 295, 319.  [343]

INDICTMENT found and returned in the Superior Court on December 8, 1967.

The case was tried before *Collins, J.*

*Reuben Goodman* for the defendant.

*Alan Chapman*, Assistant District Attorney, for the Commonwealth.

QUIRICO, J.  The defendant was convicted of the crime of armed robbery committed on October 7, 1967.  The case was tried under the provisions of G. L. c. 278, §§ 33A–33H, and it is here on the defendant's appeal.  He alleges error by the trial court in (1) admitting evidence of acts of the defendant about a crime for which he was not charged or tried, (2) admitting testimony of an identification made by a victim of the robbery to the police in the absence of the defendant, and (3) charging the jury on the defence of alibi. Other errors previously alleged by the defendant were not covered by his brief and were not argued.  We treat them as waived.

About 10:30 P.M. on October 7, 1967, two men, one carrying a shotgun, entered the Warren Spa, a "small supermarket" at 533 Washington Street in the Brighton district of Boston.  The man with the shotgun pointed it at Henry Noble, the only clerk on duty, announced, "[t]his is a stick-up," and ordered the other man with him to "[g]et the

dough." The other man thereupon went behind the counter where he took money from two cash registers, some watches from a display case, and a wallet from Noble's pocket. Warren Smith, the proprietor of the store, was in the rear room during the robbery, and he called the police as soon as the robbers left. When the police arrived Noble gave them a description of the unarmed man. The police took Noble to police headquarters that evening and showed him about 125 photographs from which he picked one as looking like the unarmed man.

Noble testified at the trial. Before he was allowed to identify the defendant as the unarmed man, the jury were excused and the court held a voir dire at the request of the defendant. At that hearing there was evidence that shortly after the defendant was arrested on November 23, 1967, he had requested counsel, with whom he had communicated while being held at the Brighton police station. The police knew this. Thereafter the police called Noble and asked him to come to the station. He went to the station and while he was seated in a room he saw the defendant walking through the room with a police officer. The defendant's attorney was not present when that happened. At the close of the voir dire hearing the court ruled that Noble's confrontation of the defendant at the police station in these circumstances in the absence of counsel violated the defendant's rights. He ordered all evidence about that confrontation suppressed. However, because of testimony about Noble's opportunity to observe the robbers and his identification of the defendant's photograph the day after the robbery, the court decided that the incident at the police station on November 23, 1967, would have no effect on Noble's testimony in court, and that he would permit him to identify the defendant before the jury.

The evidence presented to the jury by the prosecution was sufficient, if believed, to permit the jury to find the defendant guilty of the robbery which occurred about 10:30 P.M. It included testimony by Noble identifying the defendant as the unarmed man who went behind the counter

and took money and other articles. It also included testimony by another witness that after 11 P.M. on the night of the robbery the defendant told him that "he had pulled off the supermarket in Brighton, Washington Street," that he had used a shotgun, and that it would be in the paper and on the radio the next day. The day after the robbery the defendant learned that the police were looking for him, and he left the Commonwealth. He did not return until November 23, 1967, the day he was arrested.

The defence to the charge was an alibi. The defendant and a number of witnesses called by him testified that on the evening of the robbery he was at the home of his sister, Mrs. Mary Cugini, in the Allston district of Boston, and that he did not leave there until a few minutes before 11 P.M. The defendant denied being in the Warren Spa that evening. He also gave other testimony which will be stated in the discussion of alleged errors.

1. One of the defendant's alibi witnesses was Benjamin Bergstein. On the date of the robbery he lived in the third floor apartment of the same building in which the defendant's sister, Mrs. Cugini, lived. He testified that he visited the Cugini apartment several times on the evening of the robbery; and that the last visit was between 10:30 P.M. and 11 P.M., but perhaps closer to 11 P.M. On the last visit Mrs. Cugini introduced her brother to him. That was the first time he had met the defendant.

On November 23, 1967, the police found the defendant hiding in a closet of the Bergstein apartment, and they arrested him. Bergstein was away at that time, but he had left his key with Mrs. Cugini and she had given it to the defendant. Bergstein testified that the second time he saw the defendant was "at a trial . . . in the . . . District Court" sometime after November 23, 1967. No further questions were put to him about that trial. The defendant, testifying as the last defence witness, said that when he was arrested in Bergstein's apartment the police seized something they found there, and that as a result of that seizure "certain court proceedings were brought against

. . . Bergstein." The defendant was then asked: "And did you testify in behalf of . . . Bergstein"? His answer was, "I just told the judge that the stuff that was in his apartment was mine." There was no motion to strike the answer. The prosecutor then asked, "What stuff are you referring to"? The defendant objected and the court said: "This may be admitted as bearing on the credibility of not only this witness but of . . . Bergstein." The defendant excepted. The defendant then answered, "When I went to the apartment I had marihuana with me."

The defendant contends that it was error to admit this testimony "because it impeached the credibility of the witness Bergstein and the defendant by inquiring into matters irrelevant to the issue and derogatory to the witness and the defendant and because there was no conviction as required by G. L. c. 233, § 21."

This is not a case where the Commonwealth was trying to impeach either Bergstein or the defendant by proof of their commission or conviction of a crime by reason of the presence of marihuana in the Bergstein apartment. Therefore, G. L. c. 233, § 21, does not apply.

The Commonwealth had the burden of proving that the defendant was at the Warren Spa at the time of the robbery charged against him. Bergstein and the defendant both testified that at the time of the robbery the defendant was at his sister's apartment. If the jury believed that testimony they could not convict the defendant. The Commonwealth had the right to impeach that testimony in any manner permitted by law. *Commonwealth* v. *Russ,* 232 Mass. 58, 79. *Commonwealth* v. *Sansone,* 252 Mass. 71, 74.

When Bergstein left the stand the jury could find that his relationship to the defendant was limited to having seen him twice, first at the home of the defendant's sister, and a second time at a trial in a District Court. That would permit no inference that Bergstein had any particular interest or purpose in testifying in support of the defendant's alibi in the present case. In fact the District Court trial to which Bergstein referred was a trial in which he was

a defendant on a charge resulting from the finding of some marihuana in his apartment at the time of the defendant's arrest. The defendant appeared at Bergstein's trial and testified that the marihuana belonged to him, thus helping Bergstein. The Commonwealth had the right to place this additional information before the jury for their consideration in deciding on the credibility and weight of the testimony given by Bergstein and the defendant. It was material on the question whether Bergstein had a feeling for or interest in the defendant. *Day* v. *Stickney*, 14 Allen, 255, 257–258. The Commonwealth was not limited to proving this relationship through the testimony of Bergstein. It could do so by any competent means, including the testimony of the defendant who elected to testify.

The Commonwealth had the right to have the entire relationship between Bergstein and the defendant brought to the attention of the jury, and the fact that the evidence thereon may have indicated that the defendant committed another crime did not make it inadmissible. *Commonwealth* v. *Madeiros*, 255 Mass. 304, 314. *Commonwealth* v. *Mercier*, 257 Mass. 353, 368. *Commonwealth* v. *Geagan*, 339 Mass. 487, 512. *Commonwealth* v. *White*, 353 Mass. 409, 420. Likewise, such evidence being relevant and otherwise material, it is not inadmissible simply because it may have indicated that the witness Bergstein committed or was charged with a crime. *Commonwealth* v. *West*, 312 Mass. 438, 441.

The defendant relies heavily on the decision in *Braun* v. *Bell*, 247 Mass. 437, 441, as supporting his position on this alleged error. There the defendant in a motor tort action called one of his employees as a witness. The plaintiff tried to impeach the witness by evidence that at some time after the accident in litigation he had been charged with some offence for taking an automobile from the defendant's garage, and that the defendant had been one of the witnesses in his behalf at this trial. The court said: "The witness could not be discredited by asking him if he was charged with the commission of a crime and acquitted. . . . The plaintiff contends that this evidence was admissible to show

that the witness was biased in the defendant's favor because of the assistance given him by the defendant at the time he was on trial for the offence. This contention is fundamentally unsound. The evidence was not admissible and was harmful to the defendant. This exception is sustained." If, as the defendant asserts, this language is a ruling that as a matter of law the evidence offered could not show bias on the part of the witness, we do not agree. The decision does not appear to have been cited for that point in any later cases. We hold that such evidence is admissible to show bias on the part of a witness and raises a question of fact for the jury whether there was any bias.

The defendant's testimony about his possession of marihuana was but a part of his own testimony disclosing his complicity in crimes other than the robbery for which he was being tried. He volunteered the information which led to the testimony about the marihuana. He had previously told the jury in direct examination that he had a record and had been incarcerated for over a year for the crimes of using an automobile without authority, breaking into a liquor store window and taking some liquor, and breaking into two drugstores. He was under no obligation to give that testimony. Perhaps he anticipated that the Commonwealth would ultimately offer the records of his convictions against him under G. L. c. 233, § 21, and it did so. If the records were offered only by the Commonwealth they would be limited to the issue of the defendant's credibility. However, when the defendant testified to them there was no such limitation, and the jury could consider the information generally. In view of the defendant's voluntary reference to crimes other than the one for which he was on trial, it is difficult to discern and isolate any prejudice which could result from the evidence about the marihuana. It came after the defendant had already told the jury of his prior convictions for other crimes. The trial judge has wide discretion in determining the extent to which witnesses may be examined or cross-examined on facts which are otherwise immaterial but are offered for the sole purpose of showing bias

or prejudice.  *Pond* v. *Pond,* 132 Mass. 219, 222.  *Gavin* v. *Durden Coleman Lumber Co.* 229 Mass. 576, 580.  While there may be cases where this type of evidence would be so prejudicial that to admit it would be an abuse of discretion, this is not such a case.

2. The second error alleged by the defendant relates to a statement made by Noble identifying the defendant as one of the robbers.  The statement was made at the Brighton police station on November 23, 1967, in the absence of the defendant.  On motion by the defendant the court had earlier suppressed all evidence about what happened at the station that evening.  Notwithstanding the court's action, when the defendant was on the witness stand, he insisted that his counsel question him about the events of that evening.  The court permitted such questions.  The defendant thereupon testified that on that evening he was brought into a room where Noble was, that a police officer said to Noble, "Take a good look at this man.  We think he's the man that robbed you"; that Noble looked at him and then said, "That cleft looks familiar.  I think that's the man that robbed us"; and that he was then returned to his cell.

The Commonwealth recalled Noble in rebuttal.  He denied making any statement in the presence of the defendant on that evening.  He said that the officer who took the defendant to the cell returned to the room and asked him if he knew the defendant, and his answer was, "You're damn right I do.  He's the guy that held me up."

Prior to this point in the trial the witness Noble, during his direct testimony as a Commonwealth witness, had made an in-court identification of the defendant as one of the robbers.  The defendant and five witnesses called by him then testified that at the time of the robbery the defendant was at the home of his sister which was some distance from the place of the robbery.  The defendant also testified that Noble made a statement in his presence at the police station on November 23, 1967, which, if believed, impeached the positive identification which Noble had made earlier in the trial.  The Commonwealth had the right to put Noble back

on the stand to rebut the defendant's testimony by denying that he made any such statement. It also had the right to show that Noble had made a prior extra-judicial identification of the defendant which was consistent with his in-court identification.

Evidence of the prior consistent identification is admissible even though it was not made in the defendant's presence. Many pre-trial identifications are made on the basis of photographs before anyone has been arrested in the case. Thus no defendant can be present at that time. The presence or absence of the defendant at a prior identification may bear upon the admissibility of the evidence of the identification as an admission by the defendant, but this is not such a case. In *Commonwealth* v. *Locke*, 335 Mass. 106, 112, we discussed this subject as follows: "There is a conflict of authority as to the admissibility of evidence of this sort. But under our own decisions, and according to respectable authority elsewhere, such evidence is admissible . . . . Reason as well as authority supports this view. An identification made in court frequently has little testimonial value as compared with a prior identification made in the circumstances here disclosed [at a police line-up] and such evidence ought to be admissible to corroborate the identification in court." That rule has been applied in a number of similar cases. *Commonwealth* v. *Vanetzian*, 350 Mass. 491, 497. *Commonwealth* v. *Nassar*, 351 Mass. 37, 42. *Commonwealth* v. *McLellan*, 351 Mass. 335, 336. *Commonwealth* v. *Freeman*, 352 Mass. 556, 560. *Commonwealth* v. *Sullivan*, 354 Mass. 598, 606. *Commonwealth* v. *Geraway*, 355 Mass. 433, 439. *Commonwealth* v. *Salerno*, 356 Mass. 642. *Commonwealth* v. *Gibson, ante*, 45, 47. See *Commonwealth* v. *Derby*, 263 Mass. 39, 46. There was no error in admitting Noble's testimony of his identification of the defendant to the police officer at the Brighton police station on November 23, 1967. The defendant lost the benefit of the earlier order suppressing evidence of the events of that evening by insisting that his counsel question him about those events.

3. The last error alleged by the defendant relates to the instruction given by the judge to the jury on the matter of the defendant's alibi.[1] The defendant contends that the charge was inconsistent with the presumption of innocence and the principle that the prosecution must prove its case beyond a reasonable doubt, and that it therefore violated art. 12 of our Declaration of Rights and the due process clause of the Fourteenth Amendment of the United States Constitution.

The legal sufficiency of the instructions to the jury is to be judged on the basis of the charge as a whole, and not on the basis of limited or isolated portions of it. *Commonwealth* v. *Shea*, 323 Mass. 406, 416. *Commonwealth* v. *Aronson*, 330 Mass. 453, 457. *Commonwealth* v. *Greenberg*, 339 Mass. 557, 585. The instruction on the defence of alibi came at the end of the charge. Earlier in the charge the judge had instructed the jury that "[t]he Commonwealth has the burden of proof on the criminal side to prove every essential element of the crime charged beyond a reasonable doubt." He then continued with an adequate and accurate charge as to what that burden of proof meant and what it required of the Commonwealth. Having done so, he was not required to repeat the same instruction with each of the other subjects discussed in the remainder of his charge. Nothing which he said after giving the instruction on the Commonwealth's burden of proof detracted from it. Nothing which he said on the defence of alibi suggested that the Commonwealth had been relieved of its burden of proving the defendant's guilt beyond a reasonable doubt

---

[1] "Now, the defense is what we call an alibi defense. Defendant says, 'Well, I was not there. I was not the other man. There's a mistake in identity here.' And he produces evidence, testimony of others, that on this particular night at — I won't even go into the evidence as to the time; I'm going to leave that to your recollection — he was at his sister's house and left there, the defense witnesses would have you believe, at a time too late to have been, for him to have been involved in this holdup.

"Well, for the obvious reason that alibi evidence may be readily contrived, the proof to sustain such a defense may be scrutinized with particular care by the jury. It is in direct conflict with the testimony of the victim, Noble, who said he could identify the defendant. And the truth is for you to decide. You are to do what you think is fair and just, and no one is asking you to do anything more nor less."

or that the defendant had the burden of proving he was not guilty.

The judge's instruction on the defence of alibi was based on some of the language used in 1850 in charging the jury in *Commonwealth* v. *Webster*, 5 Cush. 295, 319. In countless trials since that time, judges have used substantially that same language in instructing juries on the defence of alibi. We have upheld such instructions in a number of recent cases. *Commonwealth* v. *Geagan*, 339 Mass. 487, 518. *Commonwealth* v. *Nassar*, 351 Mass. 37, 49. *Commonwealth* v. *Rogers*, 351 Mass. 522, 532. *Commonwealth* v. *Sullivan*, 354 Mass. 598, 607–608. Instructions on the defence of alibi in the language of the *Webster* case are correct. However, if such language is used, care should be exercised by the trial judge to make clear to the jury (a) that they are the sole judges of the credibility and weight of the evidence on the alibi, (b) that notwithstanding the defendant's defence of alibi, the burden remains on the Commonwealth to prove beyond a reasonable doubt all of the essential elements of the crime charged, and (c) that the defendant has no burden of proving his innocence. In this case the judge's charge to the jury, considered in its entirety, satisfies these requirements.

*Judgment affirmed.*