COMMONWEALTH *vs.* BENEDICT KUDISH
(and two companion cases [1]).

Middlesex.    April 3, 1972. — November 20, 1972.

Present: TAURO, C.J., QUIRICO, BRAUCHER, HENNESSEY, & KAPLAN, JJ.

*Identification. Constitutional Law,* Identification, Assistance of counsel, Due process of law. *Practice, Criminal,* Examination of jurors, Transcript of evidence. *Abortion.*

At the trial of an indictment for performing an abortion upon a certain woman and indictments against two other persons as accessories before the fact, there was, on findings by the judge, no error in admitting evidence of pre-indictment identifications by the woman of one of the alleged accessories on the street outside the house where the abortion occurred, of the other alleged accessory at a place where she had been taken by police, and of the alleged abortionist by photograph; nor was there error in admitting in-court identifications by the woman of all the defendants based upon observations of them other than such earlier identifications and other than a pre-indictment identification by her of the alleged abortionist at a police station, evidence of which was excluded. [630–631] KAPLAN, J., dissenting in part.

At the trial of indictments for an abortion and for being accessories before the fact thereto, where the jurors were interrogated as to bias and prejudice consistently with G. L. c. 234, § 28, there was no abuse of discretion in refusing to ask them further whether they had "any religious prejudices which would affect their decision in an abortion case." [631–632]

There was no abuse of discretion in denying motions for a new trial of a criminal case grounded on death of the trial stenographer without having transcribed her shorthand notes and alleged insufficiency of a transcription thereof by another stenographer where it was found by the trial judge that, although the other stenographer was unable to transcribe all the notes, the transcription was ade-

---

[1] The companion cases are against Sandra Rittner and Alan Segal.

quate to present all material issues to this court and the defend-
ants failed to show any specific instances of harm to them.  [632]
Evidence in a criminal case warranted findings that one of the defend-
ants was guilty of performing an abortion and that two others
by acts before its performance were guilty of being accessories
before the fact.  [632]

INDICTMENTS found and returned in the Superior
Court on November 14, 1967.

The cases were tried before *Roy, J.*

*Joseph C. Delcore* for the defendants.

*Terence M. Troyer,* Assistant District Attorney, for
the Commonwealth.

HENNESSEY, J.  These are appeals under G. L. c. 278,
§§ 33A–33G.  Indictments against the three defendants
were tried together before a jury.  Kudish was con-
victed of using an instrument to procure a miscarriage,
and Rittner and Segal were convicted of being accessories
before the fact of that crime.  The defendants assign as
error the judge's denial of their motions to suppress
identification testimony, and the denial of their motions
to put questions to prospective jurors, for directed ver-
dicts, and for a new trial.

The young lady upon whom the abortion was allegedly
performed (the young lady) testified that sometime in
September of 1967 she discovered that she was pregnant.
As a result of information received from other people,
she looked up Dr. Kudish's number in the telephone book,
called that number and asked for Dr. Kudish.[2]  A female
voice first came on the line and then a male voice.  The
young lady described her condition to this person.  This
man, who never identified himself, gave her another
name and telephone number to call.  She later called that
number and asked for Sally Rodman.  Sally Rodman was
not there, but the young lady left her own number and
within a half hour, a person who identified herself as
Sally returned her call.  This person stated that Dr.

---

[2] Although the defendant is frequently referred to in the transcript
as "Doctor" Kudish, there is nothing in the record to show that he was
or is a licensed physician.

Kudish "does not do it anymore but we have a surgeon." Approximately an hour later, a man called her for further discussion.

The young lady testified that four or five days after these calls she went to a certain restaurant in Brookline, where she was picked up after dark by two men and a girl in a car. The driver of this car was the defendant Segal, who introduced himself as "Eddie." The other man was dropped off, and after a ride of approximately one-half hour, the car stopped at a house in what she later learned was the city of Malden. The defendant Sandra Rittner was in the house when the young lady entered and was introduced as Sally Rodman. Rittner took her temperature and blood pressure and Segal obtained a blood sample from her ear. She was given a pill which was described as a "tranquilizer." She was in the presence of Rittner and Segal for about three hours.

Half an hour to an hour after the young lady arrived at the house, she heard a person walk down the stairs and then observed this person walk through the room in which she was seated and go into the kitchen. This person, whom she identified in court as the defendant Kudish, was wearing a tee shirt, regular pants and a half mask which concealed the lower part of his face including part of his nose. Later, she went into the kitchen, gave a sum of money to either Rittner or Segal and lay upon a table with her legs placed in stirrups. Either Rittner or Segal gave her a round mask containing some form of gas. During the period she was in the kitchen she put this device over her face "once or twice just for a second." She remained in the kitchen with Kudish, Rittner and Segal forty minutes, during which time Kudish inserted an instrument into her vagina, and an abortion was performed on her. During this entire period Kudish talked "off and on." His voice was the same one she had heard on the telephone when she called his office. During the abortion, the young lady was injured. She was then taken to a taxi and brought to the Massachusetts General Hospital.

A gynecologist on duty at the Massachusetts General Hospital testified that the young lady was brought there in the early morning of September 20, 1967, and that her uterus had been perforated in two places. A partial hysterectomy was performed at the hospital.

Sometime later a police officer drove the young lady past a house which she identified as the house where the abortion had occurred. She at that time identified Rittner, who was standing on the street, as the woman who was in the house on the night of the abortion. On October 30, 1967, the young lady was driven by the police to a place in Boston, where she identified Segal as the man who had been in the house on the night of the abortion. On October 6, 1967, she viewed nine photographs of men, including Kudish, and did not pick out any picture. Then a policeman showed her a picture of Kudish singly and she said, "That is pretty good. I don't think he had that much hair . . . [j]ust more hair." Thereafter, on October 30, 1967, she viewed and identified Kudish as the abortionist, at a police station where she had gone at the invitation of the police. She recognized his voice also as that of the abortionist. Kudish was under arrest, was not in a lineup, and was not represented by counsel.[3] All of these identifications of the three defendants by the young lady occurred before any complaint or indictment issued against any of them.

1. All three defendants argue that there was error in the judge's denial of their motions to suppress identification testimony by the young lady. She was allowed to make in-court identifications of all three defendants before the jury. Evidence of her pre-trial identifications of the defendants Rittner and Segal, and her pre-trial photographic identification of the defendant Kudish, was introduced before the jury, but evidence of her pre-trial

---

[3] Kudish argues in his brief that his attorney was in the police station at the time of the identification, and that the lawyer was not informed about the confrontation. The record does not support this argument. There was some evidence that the lawyer was in the police station but there was no evidence, or any attempt to establish, that he was at that time counsel for Kudish.

identification of Kudish at the police station was excluded.

There was no error. A voir dire hearing was conducted concerning the motions to suppress. After oral argument before the full court, the case was remanded to the Superior Court for more detailed findings of facts. The subsequent findings of the judge were warranted by the evidence and adequately established the constitutional validity of his rulings on the motions. Although the defendants were without counsel at the times and places of the pre-trial identification procedures, all of these confrontations occurred before the defendants had been indicted or otherwise formally charged. The *"Wade-Gilbert per se* exclusionary rule" is therefore not applicable. *Kirby* v. *Illinois,* 406 U. S. 682, 686. *Commonwealth* v. *Lopes, ante,* 448, 451. The judge's findings are sufficiently supportive of his conclusions that the identification procedures were not so unnecessarily suggestive as to constitute a denial of due process of law (*Stovall* v. *Denno,* 388 U. S. 293, 302; *Kirby* v. *Illinois,* 406 U. S. 682, 690–691) and that the photographic identification of Kudish was not so impermissibly suggestive as to give rise to a very substantial likelihood of irreparable misidentification. *Simmons* v. *United States,* 390 U. S. 377, 384. The evidence also supports the trial judge's findings that the in-court identifications were based upon observations of the defendants other than the pre-trial identifications procured by the police. See *United States* v. *Wade,* 388 U. S. 218, 240.

Of particular importance are the judge's findings concerning the length of time during which the young lady observed the defendants. These findings, especially with regard to Kudish, we have read with recognition that the young lady was observing voice, form and figure, as well as facial features.

2. The judge denied a defence motion which requested that the jurors be asked "whether or not they have any religious prejudices which would affect their decision in an abortion case." The defendants argue that the Roman Catholic Church teaches that abortion is objectively evil,

and that therefore a Catholic could not be an objective juror. The jurors were interrogated as to bias and prejudice in words consistent with G. L. c. 234, § 28.[4] Whether any questions beyond this are required rests in the sound discretion of the judge. *Commonwealth* v. *Nassar*, 351 Mass. 37, 40–41. The judge did not abuse his discretion.

3. The defendants argue that the judge erred by denying the defendants' motions for new trials because the official court stenographer who recorded the evidence died before transcribing her shorthand notes, and the subsequent transcription was insufficient to present all material issues of importance on appeal. The record discloses that the judge assigned the reading and transcribing of the shorthand notes to another court stenographer. The judge made findings and rulings that the stenographer assigned to that duty was not able to transcribe all the notes, but that in no instance is the transcript insufficient or incorrect so far as it relates to the vital issues of the case. He ruled that the transcript was sufficient to present all material questions to the Supreme Judicial Court. This ruling is supported by the evidence taken at the hearing on the motions for new trials. The defendants fail to show any specific instance of harm to them. The transcript before us appears to be complete in so far as it relates to exceptions or assignments of error. The judge, in his discretion, properly denied the motions.

4. There is no merit to the defendants' argument that the judge erred in denying their motions for directed verdicts. The evidence warranted the return of guilty verdicts.

*Judgments affirmed.*

KAPLAN, J. (dissenting in part). I would reverse as to the defendant Kudish on the ground that the young

---

[4] General Laws c. 234, § 28, reads in part, "Upon motion of either party, the court shall, or the parties or their attorneys may under the direction of the court, examine on oath a person who is called as a juror therein, to learn whether he . . . is sensible of any bias or prejudice."

lady's identification of him rested on an infirm basis which was subsequently bolstered through procedures questionable in the circumstances. The surgical mask impaired the young lady's view of the abortionist's face, and her entire observation of him at that time occurred under conditions hardly lending themselves to close attention or lasting memory. Her description of the man to the police not long after the operation was fragmentary. She failed to react to a picture of Kudish as one of a set of nine and affirmed that that was the man only when the picture was withdrawn from the set and singled out. This evidence the judge admitted. Her later identification of Kudish was through a one-way window at the police station when he was in practical effect alone in a room. This evidence the judge excluded. The sequence is not reassuring as to the reliability or integrity of the identification.